UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | CYNTHIA LAKEY AND DOUGLAS LAKEY, as co-Special Administrators for the Estate of Jared Lakey, | |
| | Plaintiffs, | |
| v. | | Case No.: 20-cv-152-RAW |
| (2) | CITY OF WILSON, ET AL. | |
| | Defendants. | |

**ESTATE'S RESPONSE TO THE MOTION TO DISMISS BY DEFENDANT KEVIN COLEY**

Pursuant to LCvR. 7.1(d), Estate of Jared Lakey respectfully submits this response to the Motion to Dismiss by Defendant Kevin Coley (Doc. 101). The motion lacks merit and Estate respectfully requests the Court deny the same.

**I.**

**BRIEF SUMMARY OF THE ARGUMENT**

Taylor and Dingman continued to tase Jared "as he lay motionless on the ground, at times seemingly less than fully conscious." (Doc. 87, ¶ 172). Nevertheless, Coley determined their actions were consistent with Coley's TASER policy that permitted officers to repeatedly tase a person who was effectively subdued in violation of clearly established law. *See*, *e.g.*, *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) ("[I]t is clear from this circuit's precedent that using disproportionate force, in this case a taser, against a subdued misdemeanant is a violation of the Fourth Amendment . . .").

## II.

### COLEY PROMULGATED AN UNCONSTITUTIONAL POLICY OR PRACTICE THAT CAUSED THE DEATH OF JARED LAKEY

"Supervisory liability 'allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements. . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution.'" *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (*quoting Brown v. Montoya*, 662 F.3d 1152, 1163-64 (10th Cir. 2011)). "A plaintiff arguing for the imposition of supervisory liability 'therefore must show an 'affirmative link' between the supervisor and the constitutional violation.'" *Id.* (*quoting Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)) (citation omitted).

To plead a viable claim for supervisory liability, the Third Amended Complaint must contain enough facts from which the Court may infer each of the following: (1) personal involvement; (2) causation; and (3) culpable state of mind. *See, e.g., Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). The Third Amended Complaint satisfies this standard for the reasons set forth below.

### A. "PERSONAL" INVOLVEMENT

The Tenth Circuit recognizes that "[p]ersonal involvement does not require direct participation because § 1983 states any official who causes a citizen to be deprived of her constitutional rights can also be held liable." *Dodds*, 614 F.3d at 1195 (*citing Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir.2008)), *see also Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("This personal-involvement requirement does not mean, however, that direct participation is necessary . . ."), *see Dodds*, 614 F.3d at 1195 ("personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him.").

Generally speaking, the element of personal participation is satisfied where a supervisory defendant "promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that caused the complained of constitutional harm." *Wilson v. Montano*, 715 F.3d 847, 856 (10th Cir. 2013). The Tenth Circuit reaffirmed its construction of the personal participation prong and causation in January 2019. *See, e.g.*, *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) (*quoting Dodds*, 614 F.3d at 1199) ("[T]he establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's affirmative link to the constitutional violation . . . . Where an official with policymaking authority creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application.") (quotations and brackets omitted)).

In this case (and to the extent Taylor is *not* a final policymaker), then Coley had responsibility for promulgating Wilson's use of force policy that authorized Joshua Taylor and Brandon Dingman to commit second degree murder by repeatedly using a TASER on a person who was effectively subdued. (Doc. 87, ¶ 4) (pleading in the alternative that Coley "had ongoing responsibilities while on leave . . . includ[ing] the . . . continued operation of the Wilson use of force policy."), *see also Id.* at ¶¶ 399, 400. This is not a case where Taylor and Dingman mistakenly or incorrectly "interpreted" Coley's policy. On the contrary, the TASER use by Taylor and Dingman was authorized by the plain language of Coley's policy <u>and subsequently approved by Coley himself as being consistent with the policy itself</u>. (Doc. 87, ¶ 132) ("Use of the TASER under the circumstances described in the Paragraphs above was excessive, but consistent with the Wilson use of force policy, and approved by Coley . . . after having a complete opportunity to review the incident and video."), *id.* at ¶ 181 ("Repeatedly using a

3

TASER simultaneously and in dart mode against Jared was excessive, but consistent with the Wilson use of force policy, and approved by Coley . . ."), *id.* at ¶ 194 ("Upon information and belief, this was not the first time Taylor had used the TASER in this manner, and use in this manner is consistent with the policies and practices of Wilson and/or Coley.") (emphasis added). In other words, not only does the policy authorize unlawful conduct, Coley's reliance on policy language alone is under-inclusive of the various methods for establishing liability.

In terms of the policy, Coley's TASER policy is unconstitutional because it authorizes repeated tasing based on nothing more than "resisting arrest," (Doc. 2-7, p. 3), and Wilson's ordinances define "resisting officers," to include "obstruct[ion]," being "disrespectful," and "use of abusive or indecent language." (Ex. 1, Wilson, OK, Code § 28-142). Under Oklahoma law, "obstruction" includes anything that "delays . . . [a] peace officer in the discharge . . . of his office." 21 O.S. § 540, *see also Trent v. State*, 1989 OK CR 36, ¶ 4, 777 P.2d 401, 402 ("[W]ords alone may suffice to support a conviction for Obstructing an Officer.").

Second, Coley did not update the TASER policy since 2014, and therefore did not incorporate limitations on TASER use published by the Tenth Circuit in 2016. *See*, *e.g.*, *Perea, supra*. Coley's TASER policy, which authorizes the use of conducted electrical weapons on people who are effectively subdued, cannot be reconciled with clearly established law from the Tenth Circuit as it existed in 2016.

Third, the policy's generic reasonableness language is not limited to use of an objective standard; it authorizes force in all circumstances (and supervisory review of that force), based on subjective reasonableness, rather than objective facts, in violation of the *Graham* standard; the policy does not even include a definition for "objective reasonableness." *See*, *e.g.*, *Duff v. Grandberry*, 2015 U.S. Dist. LEXIS 169240, at *7-9 (N.D. Ill. Dec. 18, 2015) (policy

"admonitions to officers that their use of force must be reasonably necessary" was insufficient to prevail at the motion to dismiss stage where the pleading supported the inference that municipal policy was the moving force behind the deprivation).[1]

Fourth, by its terms, execution of the policy does not turn on the "totality" of the circumstances, including the existence of any objective threat or risk to the officer or others. In other words, the policy authorizes force without any requirement that officers explicitly consider the most important *Graham* factor under an objective standard. *See, e.g., Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) ("The second *Graham* factor . . . is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force.") (citations omitted).

Finally, the patently unlawful conduct authorized by the policy, <u>including second degree murder</u>, undermines the contention that a generic reference to "reasonableness" will make an otherwise unlawful policy constitutional, especially where the Estate affirmatively pled that Coley approved of the conduct as being consistent with policy. (Doc. 87, ¶¶ 132, 181, 194, 208, 209, 329, 332, 335, 387). And, it is well-settled that disposition of the policymaker may be inferred by post-incident conduct, including a failure to change policy, provide training, or impose discipline, which are all permissible considerations for a jury in this case. *See, e.g., Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("The disposition of the policymaker may be inferred from his conduct after the [violation occurred].") (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985)).

---

[1] *See also Heaney v. Costigan*, 2012 U.S. Dist. LEXIS 55655, 2012 WL 1378597, at *1 (D. Colo. Apr. 20, 2012) ("evidence explaining how (or even if) this alleged policy was disseminated to police officers, what additional instructions or training they might have received in regard to interpreting or applying the alleged policy, or any other information . . . would illuminate how this alleged policy indeed relates to the allegations in this case").

5

The facts supporting Coley's disposition and approval of unconstitutional conduct are in addition to Paragraph 335, which includes a post-incident text message from Coley to a sitting councilmember. From that text, a reasonable juror may infer that Coley believed Doug Lakey was not justified in his criticism of the police-citizen encounter that resulted in murder charges being filed against two Wilson officers because Coley believed the use of force was appropriate and consistent with policy, which again, is further supported by Coley's failure to discipline, change policy, or provide any training.

For these reasons Estate respectfully submits the pleading satisfies the personal participation prong for establishing supervisory liability.

### B.  ENFORCEMENT OF THE POLICY CAUSED THE DEPRIVATION

As to causation, the Estate is required "to show that the defendant's alleged action(s) caused the constitutional violation" by "set[ting] in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider v. City of Grand Junction*, 717 F.3d 760, 768 (10th Cir. 2013) (quoting omitted). "As we said in *Dodds*, nothing in *Iqbal* 'altered the Supreme Court's previously enunciated § 1983 causation . . . analysis." *Id*. (*quoting Dodds*, 614 F.3d at 1200).

Coley argued that a juror could infer that something other than his policy, or the way he enforced the policy, caused the deprivation. (Doc. 102, p. 11). Of course, that same juror could just as easily infer the opposite and find that Coley's policy, and his enforcement of the policy, was, in fact, the moving force behind the deprivation. These different inferences a juror may draw from the allegations does not support relief under Fed. R. Civ. P. 12(b)(6). For these reasons, Estate respectfully requests the Court deny the motion.

6

### C.   ENFORCEMENT OF THE POLICY EXHIBITED DELIBERATE INDIFFERENCE

The final requirement for pleading supervisory liability is demonstrating deliberate indifference by Coley. Coley argued that Estate could not cite any provision of the use of force policy that authorizes excessive force, or excessive force by a TASER. (Doc. 101, p. 13). From this, Coley argued that because he lacked knowledge of any risk, he could not be deliberately indifferent to it. *Id.* at pp. 13-14. As demonstrated above, however, the contention is belied by the policy language and by Coley's own post-incident conduct.

Coley did not offer any additional basis to support this portion of his motion, but the case law cited above, including *Perea*, clearly establish the law sufficient to put Coley on notice that his use of force policy is unlawful because its execution will predictably result in officers tasing people like Jared who are effectively subdued. Despite that knowledge, Coley continued to enforce the deficient policy <u>with actual knowledge that it's enforcement resulted in second degree murder charges against two officers</u>. For these reasons Estate respectfully submits the pleading supports an inference of deliberate indifference.

### III.

### COLEY IS NOT ENTITLED TO QUALIFIED IMMUNITY

As set forth above, it has been clearly established in the Tenth Circuit since 2016 that repeatedly tasing a person who is effectively subdued violates the Fourth Amendment. *See Perea*, 817 F.3d at 1204 ("The repeated use of the taser against a subdued offender is clearly unreasonable and constitutes excessive force under the Fourth Amendment."). Additionally, in *Emmett v. Armstrong*, 973 F.3d 1127 (10th Cir. 2020) (Ebel, J.), the Tenth Circuit explained clearly established law as it relates to TASER use as the law existed at the time of the incident in that case, which occurred in October 2013. *Id.* at 1131. The *Emmett* panel held that by 2013,

7

every reasonable officer would know that "using a taser without providing an adequate warning against a misdemeanant who had ceased actively resisting was unconstitutional." *Id*. at 1139.

Here, Estate plausibly alleged that Coley enforced a policy that authorized Taylor and Dingman to repeatedly tase Jared when he was effectively subdued. (Doc. 87, ¶¶ 132, 148, 181, 194, 208, 209, 329, 332, 335, 387). And, by 2016, it was clearly established in the Tenth Circuit that such a policy would be unlawful in all of its applications. Despite the existence of clearly established law prohibiting the conduct authorized by Coley's policy, and despite actual knowledge that application of the policy resulted in Jared's murder, Coley took no steps in response to Jared's death, reasonable or otherwise, and did nothing other than continue enforcing the unlawful policy. Because the law was clearly established at least three years before Jared was murdered, Coley is not entitled to qualified immunity. For these reasons, Estate respectfully requests the Court deny the motion.

## IV.

### CONCLUSION

Coley was responsible for enforcing a policy that served as the moving force behind the murder of Jared Lakey. Coley was personally responsible for execution of the policy, and he approved of the manner in which Taylor and Dingman applied the policy to Jared Lakey. And because it was clearly established by 2016 that officers cannot repeatedly tase a person who was effectively subdued, Coley's continued enforcement of the policy in 2019 precludes a finding of qualified immunity.

Estate respectfully requests the Court deny the motion and enter such other relief as the Court deems just and equitable.

          Respectfully submitted,

          BRYAN & TERRILL

          By:   *s/J. Spencer Bryan*
                 Steven J. Terrill, OBA # 20869
                 J. Spencer Bryan, OBA # 19419
                 BRYAN & TERRILL LAW, PLLC
                 3015 E. Skelly Dr., Suite 400
                 Tulsa, OK 74105
                 Tele/Fax:   (918) 935-2777
                 Email: sjterrill@bryanterrill.com
                 Email: jsbryan@bryanterrill.com