IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA LAKEY and DOUGLAS LAKEY, as co-Special Administrators for the Estate of Jared Lakey,<br><br>*Plaintiffs*,<br><br>v.<br><br>1.  CITY OF WILSON,<br>2.  JOSHUA TAYLOR, in his official and individual capacities,<br>3.  BRANDON DINGMAN, in his individual capacity,<br>4.  CHRIS BRYANT, in his official and individual capacities as Sheriff of Carter County,<br>5.  DAVID DUGGAN, in his individual capacity,<br>6.  LONE GROVE,<br>7.  TERRY MILLER, in his individual capacity, and<br>8.  KEVIN COOLEY, in his official and individual capacities,<br><br>*Defendants*. | Case No. CIV-20-152-RAW |

## ORDER

Plaintiffs filed their 48-page, 410-paragraph Third Amended Complaint on March 30, 2021, alleging that starting just before midnight on July 4, 2019 and continuing into the early morning hours of July 5, 2019, Defendants used excessive force against Jared Lakey, resulting in his death [Docket No. 87]. Plaintiffs bring claims against: (1) the City of Wilson; (2) Joshua Taylor, the City of Wilson's "acting police chief" on July 4-5, 2019; (3) Brandon Dingman, a City of Wilson reserve police officer; (4) Chris Bryant, the Carter County Sheriff; (5) David

Duggan, a Carter County deputy; (6) the City of Lone Grove; (7) Terry Miller, a Lone Grove police officer; and (8) Kevin Coley,[1] the City of Wilson Police Chief.

Plaintiffs allege, *inter alia*, that Taylor and Dingman deployed their TASERs on Jared fifty-three times for a total of nearly four minutes, that Duggan placed Jared in a carotid chokehold for more than forty seconds while Miller stood on Jared's legs, that Dingman held Jared down in a jackknife position for nearly three minutes, that Miller then held Jared down in a jackknife position for over two and a half more minutes, that the officers waited almost four minutes to start CPR after it was announced that Jared was not breathing, and that Taylor and Dingman lied to medical providers about the sequence and number of TASER exposures Jared had endured. During all of this, Plaintiffs allege that Jared never resisted, threatened, fought, or attempted to flee, and that he was not suspected of committing any violent crime.

Plaintiffs bring the following claims pursuant to 42 U.S.C. § 1983:

- *First Claim* – Fourth Amendment municipal policy or practice of excessive force claims against the City of Wilson, Lone Grove, and Carter County Sheriff Bryant in his official capacity;
- *Second Claim* – Fourth Amendment excessive force claims against Taylor, Dingman, Duggan, and Miller in their individual capacities;
- *Third Claim* – Fourteenth Amendment civil conspiracy claims against the City of Wilson, Taylor in his official and individual capacities, and Dingman;
- *Fourth Claim* – Fourth Amendment failure to train claims against the City of Wilson, Taylor in his official capacity, Lone Grove, Carter County Sheriff Bryant in his official capacity;
- *Fifth Claim* – Fourth Amendment municipal claims against Taylor, and alternatively Coley, as the authorized decisionmaker for the City of Wilson;
- *Sixth Claim* – Fourth Amendment entity liability for excessive force claims against Carter County Sheriff Bryant in his official capacity and Taylor in his official capacity, as the final policymaker for the City of Wilson;
- *Seventh Claim* – Fourth Amendment supervisory liability claims against Carter County Sheriff Bryant in his individual capacity, and Coley, as the final policymaker for the City of Wilson;
- *Tenth Claim* – Fourth/Fourteenth Amendment failure to intervene claims against the City of Wilson, Taylor in his official and individual capacities, Dingman, and Miller;

---

[1] Plaintiffs misspelled Kevin Coley's name in the caption of the Third Amended Complaint.

- ***Eleventh Claim*** – Fourteenth Amendment deliberate indifference claims against Dingman and Miller.

Plaintiffs also bring the following state law claims pursuant to the Oklahoma Governmental Tort Claims Act, 51 OKLA. STAT. §§ 151, *et seq*. ("GTCA") against the City of Wilson and Carter County Sheriff Bryant in his official capacity: (***Eighth Claim***) municipal liability for negligent performance of a law enforcement action; and (***Ninth Claim***) municipal liability for statutory excessive force pursuant to 22 OKLA. STAT. § 34.1(B).

Now before the court are the motion for partial dismissal filed by Chris Bryant in his official capacity [Docket No. 97], the motion to dismiss filed by Lone Grove and Terry Miller [Docket No. 98], the motion to dismiss filed by Kevin Coley in his individual capacity [Docket No. 101], and the motion for the dismissal of certain claims filed by the City of Wilson and Kevin Coley in his official capacity [Docket No. 102]. All four motions are filed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     Failure to State a Claim

For purposes of the motion to dismiss, the court accepts as true all well-pleaded facts in the Third Amended Complaint and construes those facts in the light most favorable to Plaintiffs. *Western Watersheds Project v. Michael,* 869 F.3d 1189, 1193 (10th Cir. 2017). Of course, the court does not accept as true conclusory statements or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive the motion to dismiss, the Third Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs must nudge their "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

3

The Tenth Circuit has held that the "*Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "In other words, *Rule 8(a)(2) still lives*." *Id*. (emphasis added). "Under Rule 8, *specific facts are not necessary*; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik*, 671 F.3d at 1191) (emphasis added).

In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." *Robbins*, 519 F.3d at 1250 (emphasis in original). Otherwise, the complaint would fail to provide fair notice and to present a plausible right to relief.

A. <u>Carter County Sheriff Bryant</u>

Defendant Bryant moves for partial dismissal of the claims against him. Bryant seeks dismissal of the § 1983 claims against him in his official capacity listed in Plaintiff's fourth and sixth claims – failure to train regarding the use of a carotid chokehold and entity liability for the use of excessive force in the use of the carotid chokehold. Bryant argues that Plaintiffs have failed to state a claim for relief under a theory of ratification. Plaintiffs argue, and the court agrees, that they sufficiently pled that Bryant ratified Duggan's actions post-incident as being consistent with existing Carter County policy or practice.

The Tenth Circuit has held:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." Id. at 790. Plaintiffs have sufficiently pled that Bryant ratified Duggan's specific unconstitutional actions as well as the basis for those actions. See Docket No. 87 at 25, 40, and 43.

Moreover, in both their fourth and sixth claims for relief, Plaintiffs allege that "Bryant, in his official capacity, *adopted, ratified, maintained, and enforced* an official policy or practice of Carter County authorizing Duggan to use a chokehold where the totality of the circumstances did not warrant that level of force." Docket No. 87, at 40 and 43 (emphasis added). The court will not parse out and dismiss different theories of each claim at this stage. Plaintiffs have sufficiently pled these claims. The motion is denied.

Bryant also seeks dismissal of the state law claim against him in his official capacity listed in Plaintiff's ninth claim – "statutory excessive force" pursuant to 22 OKLA. STAT. § 34.1(B). He correctly argues that this is a criminal statute which confers no private right of action to a civil litigant. Plaintiffs argue that they have not brought a claim pursuant to 22 OKLA. STAT. § 34.1(B), but that they cited that statute because it defines "excessive force." Plaintiffs state that this "statutory excessive force" claim is brought pursuant to Title 51. Plaintiffs do not, as Bryant argues, however, cite to any legal authority indicating that Oklahoma recognizes a

5

"statutory excessive force" claim independent of the tort cause of action discussed in *Morales v. City of Oklahoma City*, 230 P.3d 869 (Okla. 2010). Plaintiffs point to authority wherein courts have cited the statutory definition of "excessive force" when analyzing state law negligence claims in Oklahoma, but that does not support the proposition that Oklahoma recognizes a "statutory excessive force" claim. The motion is granted as to this claim.

### B. City of Lone Grove & Terry Miller

Miller is named only in Plaintiffs' second, tenth, and eleventh claims – excessive force, failure to intervene, and deliberate indifference, respectively. Lone Grove is named only in Plaintiffs' first and fourth claims – municipal policy of excessive force and failure to train, respectively.

On page six of their motion to dismiss, Lone Grove and Miller cherry pick allegations from the 410-paragraph Third Amended Complaint, and argue that Plaintiffs have failed to state a claim against them for delay in rendering medical care, for deliberate indifference or for the associated failure to train because Miller was not ignoring Jared's condition, but was monitoring him and concerned with whether he was breathing. Defendants argue that Miller stayed with Jared and that even though he was not required by law to do so,[2] Miller eventually even performed CPR (albeit nearly four minutes after Miller himself announced that Jared was not breathing), and that Miller did not impede medical assistance once it arrived. Citing *Burke v. Regalado*, 935 F.3d 960 (2019), Defendants note that a claim for deliberate indifference requires failure to provide any timely diagnosis or medical care.

---

[2] Defendants are incorrect in their argument that Miller absolutely had no duty to administer CPR and could not be found liable for failure to provide CPR. See *Estate of Booker v. Gomez*, 745 F.3d 405, at 431-34 (10th Cir. 2014).

Allegations that Lone Grove and Miller fail to list include the following: Miller watched *and stood on Jared's legs* as Duggan applied the carotid chokehold; that once Jared was handcuffed and placed in a seated position, his labored breathing was obvious to Miller and yet Miller put his hands on Jared's back and shoulders *to force him forward into a jackknife position*; that as Jared struggled to breathe, Miller *applied more force* to his back, pushing him into a jackknife position; that Miller *prevented Jared from breathing* by pushing him into this jackknife position; and that every time Jared attempted to straighten his body and move his head back so he could breathe, Miller forced him forward, *preventing him from breathing*.  Docket No. 87, at 4-5, 23, 26-28.  The court could continue, but these allegations are sufficient to state a claim for deliberate indifference.  Plaintiffs have alleged that Miller saw that Jared was having difficulty breathing, and rather than rendering or calling for assistance for Jared, Miller intentionally made it even more difficult for him to breathe.  This is sufficient to survive a motion to dismiss, and Defendant's arguments about Miller's intentions would be more appropriate at the summary judgment stage.

In arguing that Plaintiffs have failed to state a claim for excessive force and the related claims against Lone Grove, Defendants acknowledge the allegations listed by the court above.  Defendants argue, however, that Plaintiffs do not have any statement by Jared, and that thus these allegations are conclusory and speculative.  The court does not agree.  This is an argument of proof, better made at the summary judgment stage.  The court is also unconvinced by Defendant's recharacterization of Plaintiff's allegation that Miller pushed Jared into a jackknife position, preventing him from breathing, as merely "placing a hand on Jared's back" and argument that "the hand placement can be completely innocent, or, in fact, a helpful gesture."  Docket Nos. 98, at 13 and 129, at 4.

Defendants further argue that Miller was not provided accurate information about the number of TASERs deployed prior to his arrival and that he may not have been present for the entire carotid chokehold by Duggan. Even if so, the allegations against Miller are sufficient to state a claim for excessive force. Finally, Lone Grove argues that Plaintiffs have failed to state a claim against it for a municipal policy of excessive force or for failure to train. The court disagrees. See Docket No. 87, at 34-35, 37, and 40. The motion to dismiss filed by Lone Grove and Miller is denied.

C. **Kevin Coley, in his individual capacity**

Kevin Coley, the City of Wilson's Police Chief is named in his individual capacity in Plaintiffs' seventh claim for relief – supervisory liability as the final policy maker for the City of Wilson. Coley moves for dismissal of this claim, arguing that Plaintiffs have not plausibly alleged that he personally participated in a violation of Lakey's constitutional rights, that his own conduct caused the violation of Lakey's constitutional rights, or that he was aware of a high risk of constitutional injury from Taylor's and Dingman's use of TASERs and deliberately disregarded that risk. Coley further argues that Plaintiffs have not established that any constitutional right at issue related to Coley's supervisory duties while he was on a medical leave of absence was clearly established. Coley argues that he is thus entitled to qualified immunity.

Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Turner v. Oklahoma Oklahoma Cnty. Bd. Of Cnty. Comm'rs.*, No. 19-6092, 2020 WL 995729, at *2 (10th Cir. 2020) (citation omitted). "Qualified immunity also applies to supervisory liability in § 1983 cases." *Id.* (citation omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v.*

8

*Brewer*, 773 Fed.Appx. 1032, 1036 (10th Cir. 2019) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). At the motion to dismiss stage, however, defendants are subject "to a more challenging standard of review than would apply" at the summary judgment stage. *Id*. "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Turner*, 2020 WL 995729, at *2 (citation omitted and emphasis added).

Accordingly, when a defendant raises a qualified immunity defense in response to a motion to dismiss, the court employs a two part test to determine whether Plaintiff (1) plausibly pleaded that the defendant violated a constitutional right, and (2) shows that the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.* at *3. The court has discretion to decide which of the two prongs to address first considering the circumstances of the case and need not address both. *Id*.

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown*, 662 F.3d at 1164.

The court must not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft*, 563 U.S. at 742); *Knopf*, 884 F.3d at 944 (citing *Ashcroft*, 563 U.S. at 742). Of course, a prior case need not have *identical* facts. *Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018); *Patel v. Hall*, 849 F.3d 970, 980 (10th

Cir. 2017). Still, the "clearly established law must be 'particularized' to the facts of the case." *Knopf*, 884 F.3d at 944 (citation omitted).

The court first addresses the first prong – whether Plaintiffs plausibly pleaded that Coley violated a constitutional right. Section "1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisory or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

To plausibly allege a claim for supervisory liability, Plaintiffs must allege an "affirmative link" between Coley and the alleged constitutional injury by alleging that: (1) Coley promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*.

Plaintiffs allege, *inter alia*, that Coley's responsibilities included the promulgation, creation, implementation, or possession of responsibility for the continued operation of the City of Wilson's use of force policy as applied by his subordinate officers. Plaintiffs allege that Coley expected Taylor and Dingman to use TASERs as part of their job duties, and that while their use of TASERs on Lakey was excessive and not proportional to the circumstances confronting them, it was consistent with the City of Wilson's use of force policy and affirmatively approved and ratified by Coley after he reviewed the incident and videos. Plaintiffs allege that Taylor previously used a TASER in this manner at the direction of Coley. Plaintiffs have stated a claim for supervisory liability.

As to the second qualified immunity prong – whether the constitutional right was clearly established, the parties disagree about what Plaintiffs must demonstrate. Plaintiffs cite Tenth Circuit precedent showing that it is clearly established law that repeatedly tasing a subdued person violates their constitutional rights. *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) ("The repeated use of the taser against a subdued offender is clearly unreasonable and constitutes excessive force under the Fourth Amendment.")

Coley correctly argues, however, that for their supervisory liability claim against him, Plaintiffs must show that "clearly established law . . . would . . . have put a reasonable official in [Coley's] position on notice that his *supervisory conduct* would" violate Lakey's constitutional rights. *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (citation omitted). "In other words, [Plaintiffs] must 'identify a case where an offic[ial] acting under similar circumstances as [Coley] was held to have violated' the Constitution." *Id*. (citation omitted).[3] Plaintiffs have not identified a case where an official acting under similar circumstances as Coley was held to have violated the Constitution. Accordingly, pursuant to *Perry*, Coley is entitled to qualified immunity. His motion, therefore, is granted. Coley is dismissed from this action in his individual capacity.

---

[3] While Coley is correct about the clearly-established-law question, the court does not agree that Plaintiffs must identify a case where a supervisor was on medical leave at the time of the alleged constitutional violation. Plaintiffs have alleged that Coley promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused constitutional harm to Lakey, and that Coley acted with the state of mind required to establish the alleged constitutional deprivation. The fact of his absence on the date of the alleged violation likely does not alter these allegations. If it does, that is a question more appropriate at the summary judgment stage.

D. **City of Wilson & Kevin Coley, in his official capacity**

Plaintiffs name the City of Wilson in their first, third, fourth, sixth, ninth, and tenth claims for relief and Coley in his official capacity in their fifth claim for relief. The City of Wilson and Coley move for dismissal of these claims.

As to the first claim for municipal liability, Plaintiffs must allege (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom and the injury alleged. *Graves v. Thomas*, 450 1215, 1218 (10th Cir. 2006). As stated above, Plaintiffs have so alleged. The motion is denied as to the first claim.

Plaintiff's third claim for civil conspiracy against Taylor, Dingman and the City of Wilson is based on the allegations that Taylor and Dingman conspired to falsely report the sequence and number of TASER exposures. While Plaintiffs plausibly alleged that Taylor and Dingman conspired, the City is correct that it cannot be held vicariously liable for any alleged agreement between co-employees to violate constitutional rights. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Nevertheless, Plaintiffs have plausibly pleaded that Taylor was the acting police chief at the time of the alleged violation. Accordingly, the court will not dismiss this claim at this time. The motion is denied as to the third claim.

As to the fourth claim for failure to train, the City argues that the claim fails because Plaintiffs failed to allege a pattern of deficiency. Plaintiffs correctly argue that a pattern is not required to prevail on all claims of failure to train. *Lance v. Morris*, 985 F.3d 787, 801-02 (10th Cir. 2001). To state a claim for a failure to train, Plaintiffs must allege: (1) the existence of a policy or custom involving deficient training; (2) the policy or custom's causation of an injury; and (3) the City of Wilson's adoption of the policy or custom with deliberate indifference. *Id*. at

800.  The court will not delve into and analyze herein each of the prongs and the subparts thereto at this stage, but finds that Plaintiffs have sufficiently pleaded a claim for failure to train.  The motion is denied as to the fourth claim.

Plaintiffs' fifth claim for municipal liability is based on their allegation that Taylor was a final policymaker.  Alternatively, Plaintiffs allege that Coley or the City of Wilson "was the final policymaker and, as detailed above, promulgated, created, implemented, or possessed responsibility for the continued operation of the Wilson use of force policy . . . ."  Docket No. 87, at 42.  The City of Wilson moves for dismissal of this claim, arguing that Taylor was not the final policymaker, that his use of excessive force was not reflective of any City of Wilson policy, and that Coley was not a final policymaker because he was on medical leave.  Plaintiffs have plausibly pleaded this claim in the alternative.[4]  The motion is denied as to the fifth claim.

As to the sixth claim for entity liability for excessive force, the City of Wilson argues that Plaintiffs have not sufficiently alleged that "ratification or approval" of the video represents a policy or custom of the City of Wilson that existed at the time of the incident or that any "ratification or approval" was the moving force or cause of the alleged violation of Lakey's constitutional rights.  Plaintiffs sufficiently pleaded that Coley ratified Taylor's and Dingman's actions post-incident as being consistent with existing City of Wilson policy or practice.  Plaintiffs have also sufficiently pled that the City of Wilson's use of force policy caused the violation of Lakey's constitutional rights.  The motion is denied as to the sixth claim.

---

[4] Although if this claim is ultimately based on Coley's actions, it appears to possibly be duplicative of the first claim.

13

As to the ninth claim for "statutory excessive force" pursuant to 22 OKLA. STAT. § 34.1(B), the motion is granted. As stated above, this is a criminal statute which confers no private right of action to a civil litigant. The motion is granted as to the ninth claim.

The City of Wilson argues that Plaintiffs tenth claim for failure to intervene, at least as it pertains to the City of Wilson, is conclusory. Plaintiffs simply state that Taylor and Dingman failed to intervene, which caused Lakey's injuries, and for which the City of Wilson is liable. Plaintiffs have alleged, however, that Taylor was acting in accordance with the City of Wilson's policies or customs and that he was a final policymaker as the acting chief of police. The motion is denied as to the tenth claim.

## II.   Summary

The motion for partial dismissal filed by Chris Bryant in his official capacity [Docket No. 97] is hereby DENIED as to the federal claims and GRANTED as to the state claim for "statutory excessive force." The motion to dismiss filed by Lone Grove and Terry Miller [Docket No. 98] is hereby DENIED. The motion to dismiss filed by Kevin Coley in his individual capacity [Docket No. 101] is hereby GRANTED. Kevin Coley is dismissed from this action in his individual capacity. The motion to dismiss filed by the City of Wilson and Kevin Coley in his official capacity [Docket No. 102] is hereby DENIED as to Plaintiffs' first, third, fourth, fifth, sixth, and tenth claims and GRANTED as to the state claim for "statutory excessive force." **IT IS SO ORDERED** this 1st day of February, 2022.

*Ronald A. White*
_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**