## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

CYNTHIA LAKEY and DOUGLAS )
LAKEY, as Special Administrators for )
the Estate of Jared Lakey, )
  )
                  Plaintiffs, )
  )      Case No. CIV-20-152-RAW
v. )
  )
DAVID DUGGAN, *et al.* )

---

## DEFENDANT DAVID DUGGAN'S MOTION AND BRIEF TO EXCLUDE
## IMPROPER TESTIMONY OF PLAINTIFF'S EXPERT SCOTT DeFOE
## BASED ON DAUBERT PRINCIPLES

---

Randall J. Wood, OBA No. 10531
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, LLP
1109 N. Francis
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
Email:  rwood@piercecouch.com
Email: rlafferrandre@piercecouch.com
Email: jdark@piercecouch.com

*Attorneys for Defendant David Duggan*

February 14, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................................................. ii

EXHIBIT LIST ........................................................................................................................................................

I. INTRODUCTION ............................................................................................................................................... 1

II. THE *DAUBERT* STANDARD AND FRE 702.............................................................................................. 2

III. PLAINTIFF'S EXPERT OFFERS IMPROPER LEGAL CONCLUSIONS AND FACTUAL
ALLEGATIONS THAT USURP THE ROLE OF THE COURT AND JURY ...................................... 6

    A. Expert Reports of the type now offered by Plaintiff through Mr. DeFoe
      have been repeatedly rejected by the Courts ......................................................................... 8

    B. Mr. DeFoe's Report Consists of Improper Legal Conclusions........................................... 9

IV. MR. DeFOE LACKS THE QUALIFICATIONS TO OPINE ON "STANDARD
POLICE PRACTICES" ..................................................................................................................................14

V. DeFOE'S OPINIONS ARE NOT BASED UPON ANY RELIABLE METHODOLOGY ....................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*103 Investors I, L.P. v. Square D Co.,*
  470 F.3d 985 (10th Cir. 2006)............................................................................................................... 3
*Al–Turki v. Robinson,* 10–cv–2404–WJM–CBS,
  2013 WL 603109 (D.Colo. Feb. 15, 2013)........................................................................................ 11
*Alexander v. Smith & Nephew, P.L.C.,*
  90 F. Supp.2d 1225 (2000)...........................................................................................................4, 6, 7
*Anderson v. Suiters,*
  499 F.3d 1228 (10th Cir. 2007)............................................................................................................. 9
*Berry v. City of Detroit,*
  25 F.3d 1342 (6th Cir.1994) ............................................................................................................... 11
*Blair v. City of Dallas,*
  No. 16-10202, 2016 WL 6775942 (5th Cir. Nov. 15, 2016)............................................................. 9
*Chamberlin v. City of Albuquerque,*
  2005 WL 2313527 (D.N.M. July 31, 2005)..................................................................................... 17
*Chaplin v. City of Muskogee,*
  No. CIV-11-158-KEW, 2012 WL 768041 (E.D. Okla. Mar. 8, 2012)........................................... 17
*Christiansen v. City of Tulsa,*
  332 F.3d 1270 (10th Cir. 2003) ............................................................................................................ 9
*City and County of San Francisco, Calif. v. Sheehan,*
  135 S.Ct. 1765 ........................................................................................................................................ 8
*Cox v. Glanz,*
  No. 11-CV-457-JED-FHM, 2014 WL 916644 (N.D. Okla. Mar. 10, 2014) ......................... 10, 11
*Daubert v. Merrell Dow Pharmaceuticals,*
  509 U.S. 579, 113 S. Ct. 2786 (1993) .........................................................................................1, 2, 3
*Dodge v. Cotter Corp.,*
  328 F.3d 1212 (10th Cir. 2003)........................................................................................................ 3, 4
*Erickson v. City of Lakewood,*
  No. 19-CV-02613-PAB-NYW, 2021 WL 4438035 (D. Colo. Sept. 27, 2021) ........................... 14
*Garcia v. Estate of Arribas,*
  2005 WL 6011256, (D. Kan., 2005)................................................................................................... 12
*General Elec. Co. v. Joiner,*
  522 U.S. 136 (1997)................................................................................................................................ 4
*Hadley v. Volunteers of America Care Facilities,*
  Slip Copy, 2008 WL 269446, (D. Colo., 2008) ................................................................................ 12
*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999)................................................................................................................................ 3
*Lippe v. Howard,*
  287 F. Supp. 3d 1271 (W.D. Okla. 2018) .....................................................................................9, 17
*Marquez v. City of Albuquerque.,*
  399 F.3d 1216 (10th Cir. 2005).......................................................................................................... 16

*Medina v. Cram*,
  252 F.3d 1124 (10th Cir.2001) ........................................................................................... 13, 17
*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*,
  877 F.2d 1333 (7th Cir. 1989) ................................................................................................. 10
*Moriarty v. Board of County Comm'rs for County of Sandoval*,
  931 F.Supp.2d 1142 (D.N . M.2013) ....................................................................................... 12
*Okland Oil Co. v. Conoco Inc.*,
  144 F.3d 1308 (10th Cir. 1998) ........................................................................................... 9, 12
*Phillips v. Calhoun*,
  956 F.2d 949 (10th Cir.1992) ..................................................................................................... 9
*Quinton v. Farmland Indus., Inc.*,
  928 F.2d 335 (10th Cir. 1991) ................................................................................................... 2
*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001) ................................................................................................... 3
*Richardson v. Richardson-Merrell, Inc.*,
  857 F.2d 823 (D.C. Cir. 1988) ................................................................................................. 10
*Romero v. Bd. of Cnty. Comm'rs of Cnty. Lake*,
  60 F.3d 702 (10th Cir.1995) ..................................................................................................... 17
*Sellers v. Butler*,
  02–3055–DJW, 2006 WL 2714274 (D.Kan. Sept. 22, 2006) ......................................... 12
*Specht v. Jensen*,
  853 F.2d 805 (10th Cir. 1988) ............................................................................................ 11, 15
*Summerland v. County of Livingston*,
  240 F.Appx. 70, 2007 WL 2426463 (6th Cir. 2007) ......................................................... 13
*Tanberg v. Sholtis*,
  401 F.3d 1151 (10th Cir. 2005) ............................................................................................ 16, 17
*Taylor v. Holtmeyer*,
  183 F. Supp. 3d 962 (D. Neb. 2016) ........................................................................................ 8
*United States v. Nacchio*,
  555 F.3d 1234 (10th Cir. 2009) ............................................................................................ 2, 4
*United States v. Rodella*,
  No. CR 14-2783 JB, 2014 WL 6634310 (D.N.M. Nov. 19, 2014) ............................. 15, 17
*United States v. Sheffey*,
  57 F.3d 1419 (6th Cir.1995) .................................................................................................... 10
*United States v. Simpson*,
  7 F.3d 186 (10th Cir.1993) ......................................................................................................... 9
*United States v. Velarde*,
  214 F.3d 1204 (10th Cir. 2000) ................................................................................................. 2
*Vondrak v. City of Las Cruces*,
  2009 WL 3241555 .................................................................................................................... 17
*Williams v. Indiana State Police Dep't*,
  797 F.3d 468 (7th Cir. 2015) ..................................................................................................... 9
*Woods v. Lecureux*,
  110 F.3d 1215 (6th Cir. 1997) ................................................................................................. 10

Statutes

42 U.S.C. § 1983.................................................................................................................................10, 11, 12

Rules

Fed. R. Evid. 704(a) .......................................................................................................................................... 14
FRE 702........................................................................................................................................................ passim

## EXHIBIT LIST

Exhibit 1     Report of Scott DeFoe

Exhibit 2     CV of Scott DeFoe

Exhibit 3     *Erickson v. City of Lakewood*

Defendant David Duggan moves the Court for an Order excluding the alleged expert opinions of Plaintiffs' designated expert witness Scott DeFoe on the basis of *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S. Ct. 2786 (1993).

## I.   INTRODUCTION

In the early morning hours of July 5, 2019, Defendant Duggan was finishing up his shift as a Deputy with the Carter County Sheriff's Office.  Deputy Duggan then heard radio traffic of a call involving a man, later identified as Plaintiffs' Decedent Jared Lakey, running down the street naked through the small town of Wilson, Oklahoma. Upon hearing repeated requests for back-up from the Wilson police officers on the scene, Deputy Duggan responded to the situation. While en route, he heard the Wilson officers state that this man was continuing to fight them, that he was combative, that even multiple tasers had failed to gain control of him. When Defendant Duggan arrived at the scene, he observed Jared Lakey, a man who weighed 200 lbs *more than* Deputy Duggan, sitting on the ground naked in front of the two Wilson officers. The man was tense, appeared agitated, and was clenching his fists in a manner that indicated he was prepared to physically fight.

Pursuant to what he had heard on the radio and observed on scene, Defendant Duggan believed these officers had been involved in a serious physical fight with this man and that verbal commands, hands-on techniques, and even tasers had failed to get him under control. Thus, pursuant to his previous training with the Oklahoma Highway Patrol, Deputy Duggan performed a neck restraint on the man, using pressure to render him briefly unconscious so the officers could get him cuffed. Because of Deputy Duggan's action, the officers were able to secure the man. Duggan patted Decedent on the back until he woke up. Unfortunately, Decedent suffered some sort of cardiac arrest and later passed

1

away. It was not until later that Duggan learned the Wilson officers had, in fact, *not* gone hands-on and had actually used their tasers more than 50 times.

The Plaintiffs have presented the expert witness report of Scott DeFoe, a professional consultant who has offered a series of opinions regarding the propriety of the actions of the officers that dealt with Mr. Lakey.  Although it is entirely unclear from Mr. DeFoe's report in what area the professes to be an expert, it appears that Mr. DeFoe comes before this Court as a professed expert in "police practices." However, in reality Mr. DeFoe offers standardless opinions that are based primarily on Mr. DeFoe's subjective experience as a police officer in Southern California and are not tied to any definitive guidelines for police conduct.  The Court should therefore exclude him from testifying at trial.

## II.   The *Daubert* Standard and FRE 702

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reasonably to the facts of the case.

Trial courts have broad discretion under FRE 702 to admit or exclude expert testimony. See *United States v. Velarde,* 214 F.3d 1204, 1208 (10th Cir. 2000); *Quinton v. Farmland Indus., Inc.,* 928 F.2d 335, 336 (10th Cir. 1991).  However, it is important to remember that the party proposing the expert testimony (here the Plaintiffs) bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

In evaluating the admissibility of proposed expert testimony, Courts conduct a two-step analysis. First, the Court must determine if the expert is qualified by knowledge, skill, experience, training or education to render the opinion. If this step is satisfied, the Court must then determine if the expert opinions are both reliable and relevant. *103 Investors I, L.P. v. Square D Co*., 470 F.3d 985, 990 (10th Cir. 2006); *Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 969 (10th Cir. 2001).

In step one of the analysis, *Daubert* charges the trial court to ensure that the proposed expert has the required knowledge, training, and education. The word "knowledge," as found in FRE 702, "connotes more than subjective belief or unsupported speculation. The term `applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" *Id.* at 590 (internal citation omitted). "Proposed testimony must be supported by appropriate validation—i.e. `good grounds,' based on what is known. In short the requirement that an expert's testimony pertain to `scientific knowledge' establishes a standard of evidentiary reliability." *Id.* (internal citation omitted).

The two-step analysis is the necessary product of *Daubert's* "gatekeeping" requirement.  That is, before a jury can be told what an "expert" believes, the Court must vet the "expert" to make sure their testimony is both legitimate (reliable) and helpful to the jury (relevant). *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999). This gatekeeper function requires the judge to assess the "reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of *facts." Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir.

2003). Generally, the district court should focus on an expert's methodology rather than the conclusions it generates. *Id.* at 1222. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (Citing *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

Nothing in either *Daubert* or the Federal Rules of Evidence requires the admission of an opinion which is connected to existing data only by the *ipse dixit* of the expert. *Id.* Any step that renders the analysis unreliable renders the expert's testimony inadmissible. The Court's gatekeeping "requires more than simply taking the expert's word for it." *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 Advisory Committee Note (2000)). An expert's credentials alone are insufficient to fulfill the gatekeeper function. *Id.* at 1227. The court cannot rely on an expert's mere assurance that the methodology and data are reliable. *Alexander v. Smith & Nephew, P.L.C.,* 90 F. Supp.2d 1225, 1230 (2000).

## III.   Plaintiff's Expert Offers Improper Legal Conclusions and Factual Allegations that Usurp the Role of the Court and Jury.

The Plaintiffs have proposed to introduce into evidence the purported "expert opinions" of Scott DeFoe. That Report is attached hereto as **Exhibit 1.** At the outset of that Report, Mr. DeFoe asserts that his opinions not intended to "usurp the province of the jury and are not stated as ultimate issues." [**Exh. 1,** p. 11] But after reviewing Mr. DeFoe's report, it is obvious that Plaintiffs plan to use Mr. DeFoe's report as a springboard to foist upon the Court and Jury a variety of improper legal conclusions, all masquerading as "expert" opinions.

Mr. DeFoe served with the Los Angeles Police Department as a police officer until 2010 at which time Mr. DeFoe went into reserve status. Since that time, Mr. DeFoe worked

4

as a Deputy Sheriff for about one year, then served as Director of Security for security companies. Mr. DeFoe now devotes much of his time as an expert witness, routinely testifying against police officers all over the country.  See DeFoe CV attached hereto as **Exhibit 2**.

Mr. DeFoe's report advances the following improper factual assertions and legal conclusions:

**DeFoe's Opinion Number 1:**

- Mr. DeFoe claims that a "reasonable Police Officer" would have initially determined that Mr. Jared Lakey was mentally ill, experiencing a mental crisis, and or under the influence of a controlled substance or alcohol.  Exh. 1, p. 11.

- Putting himself into the role of an ad hoc fact finder, Mr. DeFoe declares that the Defendant officers "failed to determine" that Mr. Lakey was mentally ill, under the influence of drugs or alcohol, or a "danger to self." Id. At pp. 11 – 13.

- Mr. DeFoe declares that law enforcement officers "should" be taught a variety of de-escalation techniques and "effective communication."

- None of these observations qualify as proper expert testimony. According to Mr. DeFoe's report, the *only* basis for any of these opinions is Mr. Defoe's 28 years as a police officer and his prior experiences with other incidents.  Id., at p. 14.

**DeFoe Opinions 2, 3, 4, 5, 6, 7, 8, 9, and 10:**

At pp. 14 through 36 of his report, Mr. DeFoe offers a series of opinions directed at the City of Wilson, Officer Joshua Taylor and Officer Brandon Dingman. The City of Wilson has been dismissed from this lawsuit.  [See dismissal at Dkt. 300.]  This Motion is not directed at the opinions of Mr. DeFoe that relate solely to the City of Wilson and former Officers Taylor and Dingman.

**DeFoe Opinion Number 11**

- At pp. 36 – 37 of his report, Mr. DeFoe claims Deputy David Duggan should have handcuffed Mr. Lakey. Mr. DeFoe points to the use of force policy of the Carter County Sheriff's Office which simply states that when a person is arrested "the person will be restrained by using handcuffs." Exh. 1, p. 37. Otherwise, Mr. DeFoe founds his opinion on his prior experiences as a police officer. Id.

**DeFoe Opinion Number 12**

- Mr. DeFoe claims that Deputy Duggan should not have used the neck restraint on Mr. Lakey because in Mr. DeFoe's view Mr. Lakey was not resisting, being assaultive or life threatening. Exh. 1, p. 38. Shouldering in on the ultimate question for the jury Mr. DeFoe declares that Deputy Duggan used excessive force not authorized by *Graham v. Connor* or the Carter County Sheriff's Policy. That policy states that "Deputies shall not use more force than is reasonably necessary under the circumstances." [mirroring the *Graham v. Connor* standard].

**DeFoe Opinion Number 13**

- Once again putting himself in the role of both judge and jury, Mr. DeFoe declares that all of the Defendants, including Deputy Duggan were "indifferent" to Mr. Lakey's medical needs. Exh. 1, p. 43. Although Mr. DeFoe has no experience in the medical field and has always disavowed that he is an expert in any area of medicine, Mr. DeFoe plans to lecture the jury on the "appropriate steps" that should be taken to provide first aid. See Exh. 1, pp. 43 – 44.

**DeFoe Opinion Number 14**

- Mr. DeFoe offers as an expert opinion that there was a "lack of situational awareness, failure to de-escalate and defuse the incident and fundamental tactical

6

errors in this incident." Exh. 1, p. 45. Mr. DeFoe also claims that there was a departure from Use of Force training. This Opinion appears to be directed at the actions of the City of Wilson, and not relevant to any claims made against any of the remaining Defendants.

## DeFoe Opinion Number 15

- Parroting Opinion Number 14, Mr. DeFoe claims there was a "lack of situational awareness, failure to de-escalate and defuse the incident and fundamental tactical errors in this incident." Exh. 1, p. 45. Mr. DeFoe also claims that there was a "departure" from Use of Force training and Use of Deadly Force training. Stepping into the shoes of the Court and Jury, Mr. DeFoe asserts that a "properly trained" Depouty would not have considered Mr. Lakey a threat. Exh. 1, p. 48.

- Mr. DeFoe asserts that the Carter County Sheriff's Office failed to have policies, procedures and training place to prevent incidents like this from occurring in the future. Id.

- Mr. DeFoe asserts that the Carter County Sheriff's Office failed to have a proper Use of Force Policy in place that "guides and directs sworn personnel on the proper use of force options based on the subject's level of resistance and the totality of the circumstances."

- Mr. DeFoe asserts that the Carter County Sheriff's Office failed to properly train Deputy Duggan.

- Mr. DeFoe bases these opinions on his prior experience in law enforcement. Exh. 1, p. 49

**DeFoe Opinion Number 16**

- Mr. DeFoe opines that the Defendants, including Deputy Duggan, failed to take "command and control" of the scene and failed to ensure that Mr. Lakey received "immediate medical care."

- Mr. DeFoe asserts that police officers are required to intervene if reasonable force is exceeded and "the officer must know the laws pertaining to intervention."  Exh. 1, p. 49.

### A. Expert reports of the type now offered by Plaintiff through Mr. DeFoe have been repeatedly rejected by the Courts.

Mr. DeFoe's report is a catalog of unqualified discussions of the law and self-serving legal conclusions that have no place in any expert report. His report and his opinions should be entirely excluded. The same type of report now brewed up by Mr. DeFoe at Plaintiffs' behest has been put before courts many times before. The Supreme Court has firmly rejected this type of "evidence." The Supreme Court has rejected these types of reports as sufficient to create an issue of fact.  It is well established that, "so long as a reasonable officer could have believed his conduct was justified, a plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's behavior leading up to the deadly confrontation was imprudent, inappropriate or even reckless." *City and County of San Francisco, Calif. v. Sheehan*, 135 S.Ct. 1765, 1777 (quotation omitted).  See also *Taylor v. Holtmeyer*, 183 F. Supp. 3d 962, 971 (D. Neb. 2016)(rejecting report that opined that the officer acted recklessly, unreasonably, and contrary to generally accepted police practices.) "In close cases, a jury does not automatically get to second-guess these life and death decisions, even though a plaintiff has an expert and a plausible claim that the situation could better have been handled differently." Id., at 971.

See also *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 475 (7th Cir. 2015), (rejecting expert opinion that asserted that officers failed to follow their training on how to handle mentally ill person); *Blair v. City of Dallas*, No. 16-10202, 2016 WL 6775942, at *3 (5th Cir. Nov. 15, 2016) (expert opinion that officers acted contrary to recognized police policies and procedures was insufficient to create a fact issue.)

### B.   Mr. DeFoe's Report Consists of Improper Legal Conclusions.

"While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." *Anderson v. Suiters,* 499 F.3d 1228, 1237 (10th Cir. 2007). Stated another way, "an expert may not state legal conclusions." *Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir.1992).  The Federal Rules do not "allow an expert to offer testimony that merely tells the jury what result they should reach." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir.1993). See also *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1285 (W.D. Okla. 2018) (excluding testimony of plaintiff's police practices expert which "would in effect instruct the jury on the law regarding the use of force").

The case of *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) is instructive. In that case, a man was reported to be in his home, armed, and threatening suicide. After lengthy negotiations with the Tulsa Police, the man shot himself. The family of the deceased sought to introduce an affidavit from a psychologist, saying that the actions of the police negotiators, including the psychologist brought in by the Tulsa PD, increased the likelihood of harm and the actions of the negotiators were "reckless."  [Id., at 1283.] The Tenth Circuit affirmed the rejection of this affidavit. "'Generally, an expert may not state his or her opinion as to *legal standards* nor may he or she *state legal conclusions drawn by applying the law to the facts*. [quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308,

9

1328 (10th Cir. 1998)] . . . Whether defendants in this case acted 'recklessly' is a legal conclusion, and thus, the district court properly excluded that portion of [the expert's] affidavit." (emphasis added). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (citing *Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829-32 (D.C. Cir. 1988).

The Sixth Circuit followed a similar path in *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997). In *Woods*, the trial court barred plaintiff's expert witness from testifying that the defendants were "deliberately indifferent" to the dangers facing an inmate. On appeal, the Sixth Circuit affirmed the trial court's ruling:

> It is, therefore, apparent that testimony offering nothing more than a legal conclusion-i.e, testimony that does little more than tell the jury what result to reach - is properly excludable under the Rules. It is also appropriate to exclude "ultimate issue" testimony on the ground that it would not be helpful to the trier of fact when " ' *the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.*' " [citing *United States v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir.1995)(emphasis in *Sheffey* ).]

Id., at 1220. The appellate court recognized that "deliberate indifference" depends upon the state of mind of the Defendant, which is not a proper area for so-called "expert" testimony.

In *Cox v. Glanz*, No. 11-CV-457-JED-FHM, 2014 WL 916644, at *4 (N.D. Okla. Mar. 10, 2014), a party offered an expert report that would purport to define for the jury the meaning of "deliberate indifference." This was rejected by the Court:

> The Court will instruct the jury on the meaning of deliberate indifference in the context of plaintiff's claim under 42 U.S.C. § 1983, and it is thus inappropriate for Mr. Fisher to opine on the definition of deliberate indifference. Mr. Fisher also proposes to apply his "understand[ing]" of the meaning of deliberate indifference to arrive at a conclusion that "there was no deliberate indifference" in this case. (Doc. 190–1 at 1, 3). These conclusions regarding deliberate indifference are not appropriate for expert testimony because they are conclusions as to an ultimate issue of law.

See also *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir.1994), *cert. denied*, 513 U.S. 1111 (1995).  In that case, the Sixth Circuit rejected affidavit from expert witness that opined that the defendant was "gross[ly] negligent" in training officers and that such gross negligence was comparable to "deliberate indifference.")  As the Sixth Circuit explained, "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms. The expert's testimony in this regard invaded the province of the court." Id. at 1353.

In *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), the Tenth Circuit rejected an expert testimony that the defendants "violated plaintiff's constitutional rights." The Tenth Circuit concluded that this was an improper opinion on an ultimate issue of law:

> The courts in these decisions draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury. These courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding and weighing of the evidence. In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. **The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights.... By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence.... In no instance can a witness be permitted to define the law of the case.**

853 F.2d at 808–10. (emphasis added).

In *Cox v. Glanz*, \*6, supra, the District Court marshalled numerous cases rejecting the type of expert report now authored by Mr. Defoe:

> Other courts have similarly excluded proposed expert testimony regarding whether a defendant's conduct was deliberately indifferent in the § 1983 context. *Al–Turki v. Robinson,* 10–cv–2404–WJM–CBS, 2013 WL 603109, \*5 (D.Colo. Feb. 15, 2013) (precluding expert physician from providing testimony that defendant was "deliberately indifferent" to the plaintiff's medical needs, because the physician would either be opining on the ultimate legal issue, invading the province of the jury or would be opining on the

11

defendant's knowledge and intent, which is outside the scope of expertise); _Sellers v. Butler,_ 02–3055–DJW, 2006 WL 2714274 (D.Kan. Sept. 22, 2006) (applying _Specht_ and excluding an expert's "anticipated testimony that he does not believe anyone who treated Plaintiff was 'deliberately indifferent' to his medical needs or care," because "the concept of 'deliberate indifference' is an ultimate issue in this case" and "is a legal conclusion.... If allowed to give this testimony at trial, [the expert] would be effectively instructing the jury how to decide plaintiff's section 1983 claim."); _Moriarty v. Board of County Comm'rs for County of Sandoval,_ 931 F.Supp.2d 1142, 1162–63 (D.N . M.2013) (excluding expert opinions regarding "deliberate disregard" because such opinions did not reliably apply accepted methods to the facts but "simply speculate or provide legal conclusions" and "comprise nothing if not legal conclusions").

In _Hadley v. Volunteers of America Care Facilities_, Slip Copy, 2008 WL 269446, (D. Colo., 2008), the plaintiff sued for intentional infliction of emotional distress.  Like Mr. DeFoe's report here, the _Hadley_ plaintiff presented the court with expert witness testimony that opined that defendant's employees "failed to assess, monitor and appropriately respond to [Plaintiff's] condition and to provide the necessary care and services for [Plaintiff] to attain or maintain the highest practicable physical, mental, and psychological well-being, in accordance with the comprehensive assessment and plan of care." The affidavit concluded that the deviations from the standards of care constituted "reckless and wanton conduct and a reckless disregard for [Plaintiff's] health and well being."  The expert's legal conclusions were rejected by the Court: "[The expert's] legal conclusions are not considered, as they are not an appropriate subject for expert testimony. Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." [citing _Okland Oil Co. v. Conoco Inc._, 144 F.3d 1308, 1328 (10th Cir.1998)]

In _Garcia v. Estate of Arribas_, 2005 WL 6011256, (D. Kan., 2005), the plaintiff offered expert testimony that stated "the care provided by Dr. Sellberg and Eagle Med to Traci Garcia not only fell below the standard of care expected of an air ambulance service, it was

12

grossly negligent and showed a reckless disregard for her life."  The court concluded that by opining that the defendant was grossly negligent and reckless, the expert was "directly telling the jury the legal conclusion that they should draw from the facts." The determination of gross negligence, like deliberate indifference, required a determination of the state of mind of the defendant, which is not a matter for so-called "expert" testimony. The court noted :

> "[a]n act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act is a wanton act." PIK-Civil 3d § 103.03. **This definition focuses on [Defendant's] state of mind at the time of the incident. This is a legal question, not a medical question. Although [the expert] is qualified to render certain medical opinions, he is no more qualified than the members of the jury to opine on these purely legal, as opposed to medical, conclusions.** Thus, the wisdom of the case law prohibiting this type of testimony is self-evident.  (emphasis added)

Likewise, in *Summerland v. County of Livingston*, 240 F.Appx. 70, 2007 WL 2426463 (6th Cir. 2007), the court rejected an expert witness report that was "riddled" with legal conclusions.  Like Mr. DeFoe here, the expert opined that the police officers were "grossly negligent," "overtly reckless," and "deliberately indifferent."  The Sixth Circuit affirmed that this was improper expert testimony, and was properly excluded.

In sum, an expert opinion that presents the ultimate conclusion that a defendant officer's use of force did not conform with acceptable police procedures is irrelevant, and hence inadmissible, because they ask the finder of fact to review the officer's conduct "from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene." *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir.2001).

In violation of these limitations on proper expert testimony discussed above, Mr. DeFoe hopes to testify that the officers failed to "act appropriately and reasonably," the

officers failed to "consider the totality of the circumstances," the actions of Deputy Duggan and the other officers were objectively unreasonable, and that Deputy Duggan used "inappropriate and unreasonable deadly force." Mr. DeFoe also includes in his Report a substantial discussion of *Graham v. Connor*, followed by the conclusion that Deputy Duggan engaged in unreasonable conduct. [Exh. 1, pp. 38 – 40] Mr. DeFoe declares that the officers on scene were "indifferent" to the medical needs of Mr. Lakey. [Exh. 1, p. 43] Mr. DeFoe claims that the officers "failed to de-escalate," that there was a departure from Use of Force training, and that the Carter County Sheriff's Office "failed to train" Deputy Duggan in certain areas. [Exh. 1, pp. 47 – 48] These are the same conclusions rejected by *Sheehan*, *Christiansen, Specht, Cox,* and the other cases cited above. Mr. DeFoe is clearly attempting to tell the jury what legal conclusions they should draw from the facts, and every opinion presented in **Exhibit 1** should be excluded accordingly.

## IV.   Mr. DeFoe Lacks the Qualifications to Opine on "Standard Police Practices."

Mr. DeVoe's CV [see **Exh. 2**] shows that Mr. DeFoe's law enforcement experience is limited to serving with the Los Angeles Police Department, and the Riverside County Sheriff's Department, all in Southern California. In *Erickson v. City of Lakewood*, No. 19-CV-02613-PAB-NYW, 2021 WL 4438035, at *13 (D. Colo. Sept. 27, 2021), the District Court of Colorado found that Mr. DeFoe's lacked the qualifications to speak to any "standard police practices." The *Erickson* opinion is attached hereto as **Exhibit 3.** Consider the following observations by that Court regarding Mr. DeFoe:

> Defendants argue that all of Mr. DeFoe's opinions that reference "standard police practices" should be excluded because Mr. DeFoe does not define the standards in his opinions and no such standards exist. ... **The Court agrees with defendants**. First, while Mr. DeFoe served in various positions with the Los Angeles Police Department, ... **there is no indication in Mr. DeFoe's materials or in plaintiff's disclosures that Mr. DeFoe has any experience outside of Southern California to opine on national police standards or**

14

**standard police practices, much less sufficient experience to be qualified as an expert on the subject.** Mr. DeFoe's single experience outside of Southern California was his first job after leaving the Army as a Special Agent with the United States Department of Treasury from 1988 to 1989. ... The Court does not find this adequate nationwide experience to opine on standard police practices, and there is no indication in Mr. DeFoe's credentials that he has any training in standard or national police practices.

(emphasis added).  See also *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 6634310, at *21 (D.N.M. Nov. 19, 2014) wherein the Court excluded the testimony of witness law enforcement officer whose 15-year career was limited to a single state. Because Mr. DeFoe's law enforcement experience is limited to Southern California, he lacks the qualifications to opine on "standard police practices."

**V.      DeFoe's Opinions Are Not Based Upon Any Reliable Methodology.**

Mr. DeFoe claims that his opinions are limited to evaluating the "consistency of the officers' actions with standard police practices." **Exh. 1**, p. 11. There are a number of problems with Mr. DeFoe's reliance on undefined "standard police practices." First, Mr. DeFoe lacks the experience and expertise to opine on any "standard police practices." Second, Mr. DeFoe never shows that these "standard police practices" are based on sufficient facts or data, or are the product of reliable principles and methods that can be applied to the facts of this matter. Any such opinions should therefore be precluded. *Specht*, 853 F.2d at 810.

The *Erickson* Court also determined that Mr. DeFoe's self-created declarations regarding "standard police practices" were inadmissible. First, the *Erickson* noted that Mr. DeFoe's opinions were based on "standard police practices" and Mr. DeFoe's 28-year law enforcement career, which is identical to the premise of Mr DeFoe's opinions offered in this case.  Here is the quote from *Erickson*:

15

> Second, Mr. DeFoe does not explain or identify what the standard police practices that he relies upon are, whether they are written in a manual or book, or how the practices that he relies upon (and not other practices) became the standard by which the Court should determine the reasonableness of defendants' actions. Mr. DeFoe states that his "opinions involve the consistency of the officers' actions with standard police practices." He also states that he bases his opinions on his "twenty-eight-year law enforcement career,"   ... and, while he mentions "standard police practices,"... he does not explains what these practices entail, where they are from, or how or when they are applied.

Erickson concluded that Mr. DeFoe's opinions could not be admitted: "Because there is no indication what methodology Mr. DeFoe used in deriving these standards, the Court is not able to determine whether the methodology is reliable. ... **This determination is sufficient to warrant the exclusion of all of Mr. DeFoe's opinions based on standard police practices**." *Erickson* at *13–14 (emphasis added).

Courts have barred as irrelevant and confusing the proposed testimony of an expert who proposed to testify that a defendant officer's actions violated well established law enforcement standards, because the violation of such standards is not ipso facto a Fourth Amendment violation. In *Marquez v. City of Albuquerque.*, 399 F.3d 1216, 1222 (10th Cir. 2005) the Tenth Circuit found it was not an abuse of discretion for the district court to exclude testimony that an officer's actions "violated well established law enforcement standards." The Circuit agreed such testimony was "both irrelevant and confusing on the ground that violation of such standards is not ipso facto a Fourth Amendment violation." Id.

Mr. DeFoe's opinions that Deputy Duggan or other officers may have violated local department policies or "standard police practices" do not help the Court and Jury resolve the core issue:  Did the Defendants violate the constitutional rights of Jared Lakey?  See *Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005)("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established

constitutional right ex nihilo."); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir.2001)(excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices," because "claims based on violations of state law and police procedure are not actionable under § 1983"); *Romero v. Bd. of Cnty. Comm'rs of Cnty. Lake*, 60 F.3d 702, 704 (10th Cir.1995)( "[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.").

Mr. DeFoe claims that procedures of the Carter County Sheriff's Office were not followed by Deputy Duggan. But this is not enough to show that Mr. DeFoe's opinions are based upon any reliable methodology that will be of benefit to the Court and Jury. "If a defendant violates the standard operating procedure ("SOP") governing the use of force, that fact may be pertinent to the police department's future decision to promote, retain or discipline the officer; it is not, however, relevant to determining whether the seizure violated the reasonableness requirement of the Fourth Amendment." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1281 (W.D. Okla. 2018); citing *Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005).

Recent court decisions have repeatedly rejected expert opinions that seek to describe how the officers violated department operating procedures or standard police procedures. *United States v. Rodella*, 2014 WL 6634310, at *17 (D.N.M. Nov. 19, 2014); *Chaplin v. City of Muskogee,* No. CIV-11-158-KEW, 2012 WL 768041, at *2 (E.D. Okla. Mar. 8, 2012)(Court rejected expert opinions regarding the *Graham v. Connor* standard and whether or not the officers' use of force was excessive); *Vondrak v. City of Las Cruces*, 2009 WL 3241555, at * 14 (concluding that "expert testimony that refers to SOPs or other established law-enforcement standards" was inadmissible under Tenth Circuit precedent); *Chamberlin v. City of Albuquerque,* 2005 WL 2313527, at *4 (D.N.M. July 31,

17

2005)(Browning, J.)("[U]nder *United States v. Marquez* and *Tanberg*, evidence of the SOPs is irrelevant to whether [defendant officer] acted objectively reasonably. Accordingly, the Court will preclude [plaintiff] from offering testimony or evidence about SOPs on his § 1983 claim.").

For these reasons, the proposed expert opinions of Scott DeFoe should be entirely excluded in advance of trial.

Respectfully submitted,

s/ Randall J. Wood
Randall J. Wood, OBA No. 10531
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, LLP
1109 N. Francis
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
Email:  rwood@piercecouch.com
Email: rlafferrandre@piercecouch.com
Email: jdark@piercecouch.com
***Attorneys for Defendant David Duggan***

## CERTIFICATE OF SERVICE

This is to certify that on the 14th day of February, 2023, I electronically transmitted the above document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| J. Spencer Bryan | jsbryan@bryanterrill.com |
| Steven J. Terrill | sjterrill@bryanterrill.com |
| Scott B. Wood | okcoplaw@gmail.com |
| Justin P. Ashlock | jpa@czwlaw.com |
| Wellon B. Poe, Jr. | wbp@czwlaw.com |
| Jamison C. Whitson | jcw@czwlaw.com |
| Thomas A. LeBlanc | tleblanc@bestsharp.com |
| Eric D. Janzen | ejanzen@rfrlaw.com |
| J. Kevin Behrens | kevin.behrens@dps.ok.gov |

I also certify that I served the following, who is not a registered participant of the ECF System for filing, via first class mail:

Joshua Taylor, DOC #2002519
Lawton Correctional Facility
8607 SE Flower Mound Road
Lawton, OK 73501

-AND-

Brandon Dingman, DOC #2002543/7A 102
Lawton Correctional & Rehab Facility
8607 SE Flower Mound Road
Lawton, OK 73501

s/Randall J. Wood
Randall J. Wood

19