**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CYNTHIA LAKEY and DOUGLAS LAKEY, as Special Administrators for the Estate of Jared Lakey, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-20-152-RAW |
| CITY OF WILSON, *et al.* | ) ) | |

**RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE
EXPERT TESTIMONY OF STACEY HAIL, M.D.**

Defendant David Duggan hereby submits this Response and Objection to Plaintiffs' Motion to Limit or Exclude Expert Testimony of Dr. Stacey Hail (Doc. 352). Defendant respectfully requests this Court enter an Order denying same and, in support hereof, show the Court the following:

### I.  INTRODUCTION

In the early morning hours of July 5, 2019, Defendant Duggan heard radio traffic of a call involving a man, later identified as Jared Lakey, Plaintiffs' Decedent, running down the street naked and yelling through the rural town of Wilson, Oklahoma. Upon repeated requests for back-up from the Wilson police officers on the scene, Defendant Duggan responded to the situation. While en route, he heard the Wilson officers state that this man was continuing to fight them, that he was combative, and that even multiple taser deployments had failed to gain control of him.

When Defendant Duggan arrived to the scene, he observed Mr. Lakey, a man who weighed more than 200 lbs *more than* Duggan, sitting on the curb naked in front of the two Wilson officers. The man was tense, appeared agitated, and was clenching his fists in a manner that indicated he was prepared to physically fight. Pursuant to what he had heard on the radio and

observed on scene, Defendant Duggan believed these officers had been involved in a serious physical fight with this man and that verbal commands, hands-on techniques, and even tasers had failed to get him under control. Thus, pursuant to his previous training with the Oklahoma Highway Patrol, Defendant Duggan quickly performed a neck restraint on the man, using pressure on the sides of the neck to render him briefly unconscious so the officers could get him cuffed. Because of his quick-thinking, the officers were able to secure the man. Duggan patted Decedent on the back until he woke up. Unfortunately, Decedent suffered some sort of cardiac arrest and later passed away.

Information and evidence gathered as a result of the subsequent investigation and this litigation reveals Mr. Lakey had been at Fourth of July fireworks show with friends the evening before and had been drinking. By his friends' accounts, he began acting wild and crazy, taking his shirt off and "freaking out." He even punched the inside of a friend's door and was acting erratic less than an hour before his interaction with law enforcement.

The parties have endorsed several expert witnesses to opine as to various issues in this case, including the medical cause of death. Defendant Duggan endorsed expert witness Dr. Stacey Hail, an emergency physician and toxicologist, who authored a report containing ten (10) opinions. (Exh. 1 - Report of Dr. Stacey Hail; see p. 25).

Plaintiffs filed the instant Motion to Limit or Exclude the testimony and opinions of Dr. Hail and take issue with just two of Dr. Hail's opinions:

> (2) Sympathomimetic intoxication from a novel psychoactive substance or an uncommon hallucinogenic substance cannot be ruled out as a proximate cause of JL's behavior and cardiac arrest on 7/4/2019; and
>
> (8) Officers at the scene rendered appropriate first aid while awaiting EMS to arrive.

(Doc. 352, pp. 1-2). Despite never taking her deposition and inquiring as to the bases for her opinions beyond those specifically referenced in the report, Plaintiffs criticize Dr. Hail's opinions, claiming that she did not consider a "differential diagnosis." This is simply untrue as the entirety of her report considers numerous differential diagnoses and opinions as to what could have possibly led to Mr. Lakey's death. For the reasons discussed herein, Plaintiffs' Motion should be denied and Dr. Hail's opinions should not be excluded or limited in any way.

## II.   ARGUMENT AND AUTHORITY

### A.   DR. HAIL IS A QUALIFIED EXPERT

Plaintiffs does not argue in their Motion that Dr. Hail is not a qualified expert in the fields of emergency medicine and medical toxicology nor do they question her qualifications. In fact, she is certified by the American Board of Emergency Medicine in both specialties. Dr. Hail is an Attending Physician at a Level I Trauma Center, which involves frequent assessments and observations of patients experiencing psychiatric issues, as well as illicit drug exposures and/or overdoses. (Exh. 1 - Report, p. 1). She has been a featured speaker on many relevant topics including excited delirium, opioid and other drug use, and medical toxicology. (Exh. 1 - Report, p. 48-49). Dr. Hail has contributed to numerous publications regarding death investigations, including those that involve electrical weapons, excited delirium, and drugs. (Exh. 1 - Report, p. 54). Without question, Dr. Hail is qualified as an expert in the medical field, and specifically regarding toxicology, in the general, quantitative sense.

"It is well settled that a proposed expert 'should not be required to satisfy an overly narrow test of his own qualifications.'" *Okla. Land Holdings, LLC v. BMR II, LLC*, 2020 WL 1236307, *4 (W.D. Okla. March 13, 2020), *quoting Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974). "The issue with regard to expert testimony is not the qualifications of a witness in the

abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082, 1092 (W.D. Okla. 2009), *aff'd*, 405 F.Appx. 296 (10th Cir. 2010).  This requires an expert to be both "(i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training, or education' as required by Rule 792); and (ii) specific to the matters he proposes to address as an expert." *Okla. Land Holdings*, 2020 WL 1236307 at *4, *quoting Graves*, 675 F.Supp.2d at 1092; *see also Gardner*, 507 F.2d at 528.  This requires that the expert have "sufficient specialized knowledge to assist the jurors in deciding the particular issues" in the case. *Okla. Land Holdings*, 2020 WL 1236307 at *5, *citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Likewise, Dr. Hail also possesses 'sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case.'" *Graves*, 675 F.Supp.2d at 1092, *quoting Kumho*, 526 U.S. at 157.  "Otherwise stated: '[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Graves*, 675 F.Supp.2d at 1092-1093, *quoting Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995).

As it relates to Defendant Duggan, the jury in this case will be tasked with determining (1) whether he used excessive force when he implemented a neck restraint on Mr. Lakey; and (2) whether the neck restraint caused Mr. Lakey harm and/or subsequent death. This will require Plaintiffs to demonstrate that the neck restraint was a determinative causal factor of Mr. Lakey's injuries. In order to weigh the evidence and determine these issues, the jurors must be able to understand Mr. Lakey's medical condition at the time of the force, including any and all substances

that were or likely to a reasonable degree of medical certainty were in his body. This knowledge is crucial to the jurors' determination of the issues against Defendant and, because it is not within the realm of common knowledge, expert testimony is required.

As shown, Dr Hail has had a lengthy career in the Emergency Room, dealing with intoxicated or otherwise impaired individuals, and with toxicological diagnoses and studies, spanning more than two decades. (Exh. 1 - Report). She undisputedly has tremendous training, education, experience, and expertise in all aspects of emergency care and medical toxicology, including specialized knowledge about psychiatric disorders and diseases, including substance abuse and overdoses. This specialized knowledge will certainly help the jury decide particular issues in this case, and therefore, Dr. Hail's qualifications are not only adequate in the general, qualitative sense, but are also specific the matters he proposes to address. The Court should, therefore, deny Plaintiffs' Motion.

### B. DR. HAIL'S OPINIONS ARE RELIABLE

**1. Dr. Hail's opinions regarding Mr. Lakey's Potential Drug Use**

Once the Court determines that an expert is qualified, the Court must then assess whether the expert's opinions are reliable and relevant. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883-884 (10th Cir. 2005), *quoting Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 113 S.Ct. 2786 (1993); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Kumho*, 526 U.S. 137 (1999); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). "This obligation involves a two-part inquiry." *Norris*, 397 F.3d at 883-884. First, the district court must "determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 883-884, *quoting Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. "In making this determination, the district court must decide 'whether the reasoning or methodology underlying the testimony is scientifically valid . . . '"

*Norris*, 397 F.3d at 884, *quoting Daubert*, 509 U.S. at 592-593, 113 S.Ct. 2786. "Second, the district court must further inquire into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Norris*, 397 F.3d at 884, *quoting Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. Relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Daubert, 509 U.S.* at 593, 113 S.Ct. 2786.

As Dr. Hail is undoubtedly qualified to render her opinions, the Court next must determine the admissibility of her opinion. Her second opinion, and the first at issue in Plaintiffs' Motion is, "Sympathomimetic intoxication from a novel psychoactive substance or an uncommon hallucinogenic substance cannot be ruled out as a proximate cause of JL's behavior and cardiac arrest on 7/4/2019." (Exh. 1 - Report, p. 26). Plaintiffs' Motion mischaracterizes the opinion, claiming that Dr. Hail "reached her conclusion that Jared was under the influence of illegal drugs;" however, she is offering the medical opinion that drug use *cannot be ruled out*.

Dr. Hail did not reach her conclusions lightly; she performed the necessary review, analysis and care. To reach her opinions, Dr. Hail reviewed the Medical Examiner's Report and other pertinent materials, including the video, autopsy report, medical records, various studies, etc. She considered the fact there were only superficial abrasions and a complete lack of any trauma to the skull, face, hyoid bone, larynx, and cervical spine, all of which indicate the neck restraint did not cause any traumatic injury. (Exh. 1 - Report, p. 12). Dr. Hail considered the fact that there were no signs of an airway obstruction, no signs of a pulmonary embolism or brain hemorrhages. She analyzed heart studies and saw that critical coronary artery disease present, a condition that pre-existed Lakey's encounter with Duggan and the neck restraint. (Exh. 1 - Report, p. 13).

Having ruled out any traumatic cause of death, Dr. Hail reviewed potential toxicological causes of death. As an Emergency Room physician, Dr. Hail is experienced in assessing patients who are intoxicated on alcohol or drugs or may be overdosing on illicit drugs. She is knowledgeable regarding alcohol and drugs' impact on individuals and provides numerous examples of physical reactions that mirror Lakey's behavior that night: "excitability" (running down the street naked and yelling); "agitation" (clenching fists, grunting); "diaphoresis (sweaty)," "increased heart rate," "delusions," "paranoia", etc. (Exh. 1 - Report, pp. 13-14). The suggestion of alcohol or drugs is not something Dr. Hail pulled out of thin air; she also considered that an eyewitness had heard from individuals at the hospital that night Lakey had eaten a bunch of 'shrooms, may have done methamphetamine, and was drunk. (Exh. 1 - Report, p. 9). Plaintiffs' criticism of Dr. Hail's reliance on this statement is misguided as an expert may rely on otherwise inadmissible facts to formulate her opinions so long as the evidence is a type reasonably relied on by experts in the field. *Ambrosini v. Labarraque,* 966 F.2d 1464, 1466 (D.C.Cir.1992). Additionally, this is not some lone reference to a potential that Lakey had taken some drugs; rather, *numerous* individuals testified they believed or at least speculated that Lakey had consumed and was experiencing the effects of drugs. (Exh. 2 - Depo of Mark Cole, p. 30, lines 8-23; p. 41, line 25 through p. 42, line 4: Q: "Is it still your impression today thta Jared was on some type of a drug that night?" A: "Yes, sir."; Exh. 3 - Depo of Kody Helms, p. 53, line 18 through p. 54, line 2: Q: "Were you thinking, 'Has [Jared Lakey] taking something?'" A: "Yes, sir."; Exh. 4 -Depo of Duggan, p. 144, lines 13-19) In fact, ***Plaintiffs' own medical expert agrees it is possible and should be considered that Mr. Lakey was on some type of drugs that night.*** (Exh. 5 - Depo of Sperry, p. 42, lines 24 through p. 43, line 5; p. 83, line 11 through p. 84, line 3).

The jurors will be able to view the video of Lakey's conduct, listen to the testimony of those who encountered him, and may apply those observations to the science behind what this behavior indicates to a medical emergency physician and toxicological expert. This testimony and opinion by Dr. Hail will be incredibly helpful to a jury who may not know the science behind drugs or alcohol or what it can do to a body regardless of whether there is any encounter with law enforcement after consumption.

Unfortunately, Lakey's blood was not tested until more than 30 hours after the initial cardiac arrest; therefore, any and all drugs that could have been in Lakey's system at the time of the incident had metabolized or were not tested for in the typical drug screens. (Exh. 1 - Report, p. 14). Plaintiffs' own medical expert agrees. (Exh. 5 - Depo of Sperry, p. 45, lines 9-24). Without having accurate, time-sensitive blood testing results from Lakey's body right after the incident, but knowing how he appeared to law enforcement on the scene and comments about likely drug use, Dr. Hail opined that *intoxication from a novel psychoactive substance or an uncommon hallucinogenic substance cannot be ruled out.* This isn't a guess. This isn't a baseless opinion. This is science and fact and the very nature of our judicial system rests on providing the facts and information before a jury to let it decide whether liability exists. Plaintiffs offer no meaningful dispute of this opinion beyond a general disagreement and the potential prejudice this opinion may have on a jury's sympathy toward Mr. Lakey. This is an insufficient basis under *Daubert* and Dr. Hail's opinion should not be excluded or otherwise limited.

Plaintiffs' argument that Dr. Hail "made no effort to exclude other possible explanations for Jared's behaviors" is simply untrue. Dr. Hail considered and ruled out traumatic cause of death (Exh. 1 - Report, p. 12); she considered natural causes of death (Exh. 1 - Report, p. 12); she considered other potential causes of sudden in-custody death, including excited delirium

syndrome, capture cardiomyopathy, positional asphyxia, stress cardiomyopathy and taser use. (Exh. 1 - Report, p. 13-22). She considered "mental illness, recent psychostimulant use, or both" as pre-cursors to excited delirium syndrome. (Exh. 1 - Report, p. 15). A plain review of Dr. Hail's expert report demonstrates she has used reliable methodology in arriving at her opinion, which is substantially the same as Plaintiffs' own expert in fact, that it cannot be ruled out that Mr. Lakey was under the influence of drugs on the night of July 4 and in the early morning hours of July 5, 2019.

   2. **Dr. Hail's Opinion Regarding Appropriate First Aid**

Dr. Hail's Eighth Opinion, that "officers at the scene rendered appropriate first aid while awaiting EMS to arrive" is based on a reasonable degree of medical certainty. To come to and support this conclusion, Dr. Hail reviewed the body camera video and the ambulance records. She acknowledged that Narcan was administered, further proof of the belief Mr. Lakey was experiencing some sort of drug-induced medical issue (Exh. 1 - Report, p. 23). Further, she reviewed and considered medical literature regarding resuscitation and its potential success in the setting of excited delirium. Id. Her opinions regarding the provision of medical care after Mr. Lakey was found to be in medical distress are based on her education, experience, and applicable literature and will provide the jury the scientific knowledge they need to determine the issues in this case.

   3. **Plaintiffs cannot, and have not, shown that Dr. Hail's testimony is unreliable under Rule 702.**

As shown above, all of Dr. Hail's opinions are supported by appropriate methodology as reflected in Dr. Hail's expert report. Merely because Plaintiffs or their counsel disagree with her methodology or opinions does not render Dr. Hail's opinions or testimony unreliable. Rather, such criticisms would go to the weight of her testimony, not its admissibility.

To be reliable under Daubert, an expert's scientific testimony must be based on scientific knowledge, which implies a grounding in methods and procedures of science based on actual knowledge, not subjective belief or unsupported speculation. *Dodge v. Cotter Corp.*, 328 F.3d 1212 (10th Cir. 2003). **An inference or assertion** must be derived by the scientific method and must be supported by appropriate validation, in other words, good grounds based on what is known, to be admissible. *Id*. The proponent of the testimony must show that the method employed by the expert in reaching his or her conclusion is scientifically sound and that the opinion is based on facts which satisfy the governing rule's reliability requirements. *Id*. Thus, the test under *Daubert* does not require that the opinion have "the best foundation" or be "demonstrably correct," but only that the "particular opinion is based on valid reasoning and reliable methodology." *Qeisi v. Patel*, 2007 WL 527445, *4 (E.D.Pa. Feb. 9, 2007).

Here, Dr. Hail's methodology is reliable and based on sufficient facts and data. Likewise, the methodology is widely and generally supported in the medical community. In forming her opinions, Dr. Hail reviewed body camera videos, 911 dispatch calls, witness statements, Medical Examiner's Report, medical records, deposition transcripts, medical literature among other things.  All of her opinions are based upon accepted and reliable methodology and applied the facts and data present in this case.  As such, Plaintiffs are unable to establish that Dr. Hail's opinions are so fundamentally unsupported that thy can offer no assistance to the jury.  Other than Plaintiffs' unsupported assertions, they fail to explain how reaching a different conclusion from that of their own experts amounts to an impermissible analytical gap with regard to the relevant opinion.

A review of the case law after *Daubert* shows that the rejection of expert testimony is the *exception rather than the rule. Daubert* did not work a "seachange over federal evidence law,"

and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595 (1993). Likewise, Rule 702 was not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael,* 119 S.Ct. 1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises."); *Ambrosini v. Labarraque,* 101 F.3d 129, 138-139 (D.C. Cir. 1996) ("there is nothing in *Daubert* to suggest that judges become scientific experts, must less evaluators of the persuasiveness of an expert's conclusion"); *Globetti v. Sandoz Pharm. Corp.,* 111 F. Supp. 2d 1174, 1176 (N.D. Ala. 2000) (role of fact finder, not judge, is to decide whether opinion is correct or worthy of credence).

Plaintiffs may disagree with Dr. Hail's medical opinions, and are free to explore the perceived flaws in the factual basis for those opinions on cross-examination, but they have not established that Dr. Hail's opinions should be excluded under the standard espoused in *Daubert.*

Plaintiffs have not, and cannot, show that there is any lack of reliability or an insufficient factual foundation for Dr. Hail's opinion. On a *Daubert* challenge, it is not the role of the Court to declare whether an expert's opinion is in fact correct. Rather, it is the role of the Court to determine whether Dr. Hail is qualified to offer the opinions and whether she utilized a reliable

methodology in forming her opinions. Any dispute Plaintiffs have with the outcome of Dr. Hail's methods is a matter for cross-examination, not exclusion under Rule 702. Accordingly, Plaintiffs' *Motion* should be denied.

        Respectfully submitted,

        s/ Jessica L. Dark
        Randall J. Wood, OBA No. 10531
        Robert S. Lafferrandre, OBA No. 11897
        Jessica L. Dark, OBA No. 31236
        PIERCE COUCH HENDRICKSON
          BAYSINGER & GREEN, LLP
        1109 N. Francis
        Oklahoma City, Oklahoma 73106
        Telephone: (405) 235-1611
        Facsimile: (405) 235-2904
        Email:  rwood@piercecouch.com
        Email: rlafferrandre@piercecouch.com
        Email: jdark@piercecouch.com
        ***Attorneys for Defendant David Duggan***

**CERTIFICATE OF SERVICE**

  This is to certify that on the 28th day of February, 2023, I electronically transmitted the above document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| J. Spencer Bryan | jsbryan@bryanterrill.com |
| Steven J. Terrill | sjterrill@bryanterrill.com |
| Justin P. Ashlock | jpa@czwlaw.com |
| Wellon B. Poe, Jr. | wbp@czwlaw.com |
| Jamison C. Whitson | jcw@czwlaw.com |
| Eric D. Janzen | ejanzen@rfrlaw.com |

  I also certify that I served the following, who is not a registered participant of the ECF System for filing, via first class mail:

Joshua Taylor, DOC #2002519
Lawton Correctional Facility
8607 SE Flower Mound Road
Lawton, OK 73501

-AND-

Brandon Dingman, DOC #2002543/7A 102
Lawton Correctional & Rehab Facility
8607 SE Flower Mound Road
Lawton, OK 73501

                s/ Jessica L. Dark
                Jessica L. Dark