IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA LAKEY and DOUGLAS LAKEY, as co-Special Administrators for the Estate of Jared Lakey,<br><br>*Plaintiffs*,<br><br>v.<br><br>1. CITY OF WILSON,<br>2. JOSHUA TAYLOR, in his official and individual capacities,<br>3. BRANDON DINGMAN, in his individual capacity,<br>4. CHRIS BRYANT, in his official and individual capacities as Sheriff of Carter County,<br>5. DAVID DUGGAN, in his individual capacity,<br>6. LONE GROVE,<br>7. TERRY MILLER, in his individual capacity, and<br>8. KEVIN COOLEY, in his official and individual capacities,<br><br>*Defendants*. | Case No. CIV-20-152-RAW |

**ORDER**

Before the Court is Plaintiff, Estate of Jared Lakey's Motion to Limit or Exclude the Expert Opinion of Mark Kroll. [Dkt. No. 351].

**I.   Standards governing admissibility of expert testimony.**

Pursuant to Rule 702 Fed. R. Evid. (as interpreted in *Daubert*) a district court must satisfy itself that the proposed expert testimony of an expert is both reliable and relevant before permitting the jury to assess such testimony. *United States* v. *Wofford*, 766 Fed. Appx. 576, 581 (10th Cir.

2019); *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993). The Rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Reliability is determined by evaluating the reasoning and methodology underlying the expert's opinion. Relevance is about whether the expert testimony will assist the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility. *Wofford,* 766 Fed. Appx. at 581.

The Supreme Court set forth the following non-exclusive factors a court should consider when evaluating the admissibility of proposed expert testimony: (1) can and has the theory been tested; (2) has it been peer reviewed; (3) does it have a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; (5) does it have widespread acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593. The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id*. The party seeking the admission of the expert testimony has the burden to establish it's admissibility by a preponderance of the evidence. *Id*. at 592 n.10. The trial court must decide whether this particular expert has sufficient specialized knowledge to assist the jurors in deciding the facts at issue in the case the case." *Kumho*, 526 U.S. at 157, 119 S.Ct. 1167; *Graves* v. *Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092 (W.D. Okla. 2009), aff'd, 405 F. App'x 296 (10th Cir. 2010).

In fulfilling its *Daubert* obligations a trial court must also determine whether proposed testimony is sufficiently "relevant to the task at hand." 509 U.S. at 597. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *Bitler* v. *A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir.2004). The Supreme Court has held that a trial court must evaluate the logical relationship between the evidence proffered and the material issue that evidence supports to determine if the expert will assist the trier of fact. *Id*. In the Tenth Circuit, courts carry out the *Daubert* gatekeeping function by applying a two-step analysis. *Ralston* v. *Smith & Nephew Richards, Inc*., 275 F.3d 956, 969 (10th Cir. 2001). First, the court must determine whether the proposed expert is qualified. This requires an assessment of his "knowledge, skill, experience, training or education." *See* Rule 702 and *Ralston,* 275 F.3d at 969. Secondly, if the proposed expert is determined to be sufficiently qualified, the court must determine whether his opinions are "reliable" in the sense required by *Daubert* and *Kumho. Id.*

**II.     Analysis.**

Defendants Joshua Taylor and Brandon Dingman filed an Expert Disclosure indicating they intend to call Mark Kroll to testify as an expert regarding the use of tasers on the decedent Jared Lakey. [Dkt. No. 252-2]. Mark Kroll has a Ph.D. in electrical engineering and research experience involving tasers and biomedical applications of electrical engineering. He has also testified in a variety of legal proceedings in the United States and internationally. [Dkt. No. 252-2 pp. 71-157]. Plaintiff objects to several of Dr. Kroll's opinions arguing that he is either not qualified, the opinion is does not require specialized training, or that it is irrelevant to the present case. [Dkt. No. 351 pp.1-2].

3

Regarding Plaintiff's objection to Opinion 1, we agree with Plaintiff that Dr. Kroll's determination that Defendant Taylor "exhibited significant restraint of his use of CEW" is not one that requires an expert opinion as it does not rely on Dr. Kroll's specialized knowledge. Whether Defendant Taylor exhibited restraint is a subjective belief that does not require expert qualifications. Therefore, his opinion is not helpful to the jury and should be excluded. *See Sims* v. *Great American Life Ins. Co.*, 469 F.3d 870, 889 (10th Cir. 2006).

The Plaintiff objects to Opinions 4-7 because in each opinion Dr. Kroll asserts that Mr. Lakey could not have been electrocuted by Dingman and Taylor's TASER usage. For instance, Opinion 6 states that "Mr. Lakey's cardiac arrest rhythm was asystole thus eliminating the possibility of electrocution". [Dkt. No. 351 at pp. 2-4]. As the Plaintiff points out, the Estate does not argue that Mr. Lakey was electrocuted by the repeated TASER administrations. Rather, the Estate, and the Medical Examiner assert that a buildup of lactic acid resulting in rhabdomyolysis brought on by the repeated TASER applications killed Mr. Lakey. *Id*. Because no one is arguing that Mr. Lakey was electrocuted, the opinions regarding electrocution are not relevant to the determination of any fact at issue in the present case and will therefore be unhelpful to the jury. *Daubert*, 509 U.S. at 597.

Furthermore, we agree that Dr. Kroll, who is an electrical engineer, does not have the relevant "knowledge, skill, experience, training or education." expertise to proffer Opinion 8 and Opinion 9 where he asserts that the taser did not contribute to Mr. Lakey's death. *See* Rule 702 and *Ralston*, 275 F.3d at 969.

The Defendants have not carried their burden to show that Dr. Kroll's Opinions are admissible by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10. It is therefore

4

ordered by the Court that the Plaintiff's motion to exclude Mark Kroll's testimony [Dkt. No. 351] is GRANTED.

IT IS SO ORDERED this 2nd day of January, 2024.

_____
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE