IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA LAKEY and DOUGLAS LAKEY, as co-Special Administrators for the Estate of Jared Lakey,<br><br>*Plaintiffs*,<br><br>v.<br><br>1. CITY OF WILSON,<br>2. JOSHUA TAYLOR, in his official and individual capacities,<br>3. BRANDON DINGMAN, in his individual capacity,<br>4. CHRIS BRYANT, in his official and individual capacities as Sheriff of Carter County,<br>5. DAVID DUGGAN, in his individual capacity,<br>6. LONE GROVE,<br>7. TERRY MILLER, in his individual capacity, and<br>8. KEVIN COOLEY, in his official and individual capacities,<br><br>*Defendants*. | Case No. CIV-20-152-RAW |

**ORDER**

Before the Court are Defendants City of Lone Grove and Terry Miller's Motion to Exclude Anticipated Testimony of Michael Leonesio and Brief in Support [Docket. No. 348]; the Motion to Exclude Expert Testimony of Michael Leonesio by David Duggan [Docket No. 355]; Plaintiff's

1

Motion to Exclude or Limit Expert Testimony of Tim Tipton [Dkt. No. 353]; Defendant Duggan's Motion to Exclude Improper Testimony Scott DeFoe [Dkt. No. 350]; Defendant Duggan's Motion to Exclude Plaintiffs' Expert Kris Sperry [Dkt. No. 349]; Defendants Lone Grove and Terry Miller's Motion to Exclude Anticipated Testimony of Kris Sperry [Dkt. No. 356]; and Plaintiff's Motion in Limine to Limit or Exclude Expert Opinion of Stacey Hail [Dkt. No. 352].

> I.   **Standards governing admissibility of expert testimony.**

Pursuant to Rule 702 Fed. R. Evid. (as interpreted in *Daubert*) a district court must satisfy itself that the proposed expert testimony of an expert is both reliable and relevant before permitting the jury to assess such testimony. *United States* v. *Wofford*, 766 Fed. Appx. 576, 581 (10th Cir. 2019); *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993). The Rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Reliability is determined by evaluating the reasoning and methodology underlying the expert's opinion. Relevance is about whether the expert testimony will assist the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility. *Wofford,* 766 Fed. Appx. at 581.

The Supreme Court set forth the following non-exclusive factors a court should consider when evaluating the admissibility of proposed expert testimony: (1) can and has the theory been tested; (2) has it been peer reviewed; (3) does it have a known or potential error rate; (4) the

2

existence and maintenance of standards controlling its operation; (5) does it have widespread acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593. The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id*. The party seeking the admission of the expert testimony has the burden to establish it's admissibility by a preponderance of the evidence. *Id* at 592 n.10. To perform its gatekeeping role, the district court must make specific findings on the record so that the appellate court can determine if it carefully reviewed the objected-to expert testimony under the correct standard. *Tudor* v. *Southeastern Okla. St. Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021); *See also United States* v. *Cushing*, 10 F.4th 1055, 1079 (10th Cir. 2021). However, when an expert's methodology is not complex, technical, or highly specialized, a less detailed district court ruling is sufficient. *Tudor*, 13 F.4th at 1030. (Internal citations omitted.)

Furthermore, the gatekeeping function of the court set forth in Daubert applies not only to scientific knowledge, but also to "technical" or "other specialized knowledge." *Kumho Tire Co*. v. *Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999). When an expert relies primarily on his experience to satisfy the reliability prong, the witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes. Courts should exclude an expert's testimony if they conclude "that there is simply too great an analytical gap between the data and the opinion proffered" by the expert. *Gen. Elec. Co*. v. *Joiner*, 522 U.S. 136, 140 (1997). Experts may refer to legal standards in formulating their opinions "but may not apply the law to the facts of the case or otherwise tell the jury how the case should be decided." *United States* v. *Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993). Expert testimony on legal issues crosses the line between the permissible and impermissible when it

3

"attempt[s] to define the legal parameters within which the jury must exercise its fact-finding function." *Specht* v. *Jensen*, 853 F.2d 805, 809-10 (10th Cir.1988).

## II. Use of Force Experts.

### a. Michael Leonesio.

The motions before the Court by Defendants Lone Grove and Terry Miller and by Defendant Duggan both seek to exclude or limit the opinions of the Plaintiff's use of force expert, Michael Leonesio. [Docket No. 348 and Docket No. 355]. Mr. Leonesio provided opinions regarding the use of force by all the officers and on the adequacy of the first aid provided by the officers. Defendants argue that Mr. Leonesio's opinions should be excluded because he is unqualified, he asserts improper legal conclusions, his opinions and methods are not reliable, and his testimony will not assist the trier of fact. Defendants additionally argue that Mr. Leonesio's opinions regarding deliberate indifference are improper legal conclusions that should be excluded. Plaintiff argues that Mr. Leonesio's testimony is well founded in reliable methodology and will assist the trier of fact. [Docket No. 369].

### 1. Police use of force and policy opinions.

As an initial matter, we find that Mr. Leonesio is qualified to give the opinions he proffers regarding police use of force and the City of Wilson Police department use of force policy. Mr. Leonesio is former police officer with ten (10) years of experience, a police training instructor, and a former paramedic. He has also served as a subject matter expert on Use of Force Review Boards and has extensive knowledge of police practices and TASERS. He has attended and taught a variety of classes on TASER use and written police department policy on use of force. [Docket. No. 237-2 p. 1-6]. Mr. Leonesio also worked as a paramedic for fourteen (14) years. Accordingly,

4

because Mr. Leonesio has substantial knowledge, skills, and training on the subjects, he is qualified to opine about the use of force in the present case and the use of force policies.

In the portion of his report titled Methodology, Mr. Leonesio describes the analysis he applied in reaching his conclusion as follows:

> I have reviewed and analyzed the above listed documents and materials and have prepared this report based on that effort. The opinions expressed in this report are held to a reasonable degree of professional certainty. In this report and subsequent testimony related hereto, I may cite or refer to court rulings, legal principles, or legal concepts. I cite these rulings and refer to these concepts strictly as a law enforcement professional.
>
> As a law enforcement officer, I am expected to have a working knowledge of clearly established laws and court rulings related to the profession's core tasks. As a law enforcement trainer, I teach to these laws, rulings, and concepts and have done for may years. As a law enforcement use of force subject matter expert, I have applied these laws, rulings, and concepts in my evaluation of policies, procedures, training materials, and individual officer performance.

[Docket No. 237-2 p. 3.] Mr. Leonesio's goes on to opine on each instance in which an officer used force against Jared Lakey including the use of the taser, neck restraint, and post handcuffing physical restraint. He also opined on the medical aid provided by the officers and the adequacy of the City of Wilson Police department use of force policy. [Docket No. 237-2].

Defendants object to Mr. Leonesio's opinions on the grounds that the methods are inadequate and his opinions constitute impermissible legal conclusions. [Docket. No. 355 at 16]. An expert witness may rely primarily on his experience in reaching his opinions if he explains how that experience led him to his conclusions. *Supra.* p.1 citing Fed. R. Evid. 702 advisory committee's notes. Here, Mr. Leonesio explains the standards police officers are held to when applying force in an arrest. He then explains, how given the circumstances, the various uses of force by the officers involved were not in his view, justified. Mr. Leonesio has significant experience teaching and applying police use of force policies. By applying the relevant standards

5

to the officers' conduct, he adequately explained how his experience, led him to his conclusions. He repeats the same process when analyzing the department use of force policies. Because he relies primarily on his experience to form his opinions, and he explains how that experience leads him to his conclusions, Mr. Leonesio's methods are reliable.

Defendants also argue that Mr. Leonesio's opinions constitute ultimate conclusions that invade the province of the jury and impermissible legal conclusions that invade the role of the Court. [Docket No. 355 p.16 and Docket No. 348 p. 20]. Experts may refer to legal standards in formulating their opinions "but may not apply the law to the facts of the case or otherwise tell the jury how the case should be decided." *United States* v. *Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993). While testimony on ultimate legal issues is impermissible, an expert witness may refer to the law in expressing an opinion and assist the jury in understanding the facts even if that opinion is couched in legal terms. *Specht* v. *Jensen*, 853 F.2d 805, 809- 810 (10th Cir. 1988).

In the present case, Michael Leonesio's opinions on police use of force are couched in legal terms but are admissible under Rule 702. Mr. Leonesio makes repeated reference to legal standards particularly Supreme Court cases that articulate how to analyze whether a police use of force violates a suspects fourth amendment rights. [*See* Docket No. 237-2. p. 10 citing *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 98 n.1 (1983)]. However, the Court is not persuaded that in the context of a police practices and use of force expert, Mr. Leonesio's opinions constitute an impermissible legal conclusion. The industry standards and department policies for police use of force are dictated by the Supreme Court's interpretation of the Fourth Amendment. Therefore, it would be nearly impossible for a use of force expert to analyze the propriety of an officer's conduct without reference to certain aspects of Fourth Amendment doctrine. This does not necessarily make the analysis a legal one. Because he does so in his capacity as a law enforcement expert

6

analyzing police conduct in the context of industry standards, Mr. Leonesio's opinions are not impermissible legal conclusions.

Mr. Leonesio's opinions on the City of Wilson's use of force policy are also admissible. Mr. Leonesio has experience developing and administering law enforcement use of force policies. His report adequately explains how that experience informs his opinions, and therefore, his opinions on the topic are admissible.

Accordingly, to the extent the Defendants seek to exclude Mr. Leonesio's opinions on use of force and the City of Wilson Police Department policies, their motions are DENIED.

## 2. First Aid and Deliberate Indifference Opinions.

In Mr. Leonesio's "Opinion 4" he comments on the first aid the officers provided to Mr. Lakey, and he concludes that their actions were deliberately indifferent. [Docket. No. 237-2 p.18-23]. This expert is not qualified to offer these opinions, and he also fails to adequately explain his opinions as required by under *Daubert* and *Kumho*. *Daubert*, 509 U.S. at 593; *Kuhmo*, 526 U.S. at 149. Here Mr. Leonesio starts his analysis by reiterating some of the facts of the case with reference to time stamps in the OSBI combined view video. He also provides background information explaining how Narcan works. For instance, he states that "[i]n order to achieve therapeutic effects through the administration of pharmaceuticals into the bloodstream, the body must have blood circulation- especially in the case of nasal administration". [Docket No. 237-2 p. 20.] Mr. Leonesio does not cite to any scientific sources and is not trained in pharmacology or another field that would provide him with the expertise to opine as to how Narcan works. Furthermore, his critique of the officer's decision to administer Narcan is presented without any

7

explanation of the methods or procedures he used for determining that Narcan administration was not advisable.

For instance, Mr. Leonesio states that because Officer Miller was previously trained as an EMT, paramedic, and behavioral health technician, that this training and experience would make Miller "familiar with the signs and symptoms of respiratory and cardiac arrest and their treatments." [Docket No. 237-2 at 20-21]. He further opines that Miller, by virtue of his previous work experience would also have a "more than working knowledge of the indications for administration, pharmacology, delivery routes and mechanisms, and therapeutic effects of Narcan." *Id*. He asserts that Narcan was clearly "contraindicated" based on Mr. Lakey's symptoms. Mr. Leonesio does not explain why Narcan is contraindicated, what aspects of paramedic/EMT training would have taught this to Miller or provide any scientific or medical citations to support this assertion. The only citations Mr. Leonesio provides in this section are to the OSBI combined view video, officer depositions, and various legal authority detailing the standards of care for a person in custody and case law on deliberate indifference. He does not articulate how he concluded either that Narcan was not the proper course of action or how Miller should have known this information. Thus, even if he were qualified to assert this opinion, his explanation of his methods renders the testimony on these issues unreliable and inadmissible. Fed. R. Evid. 702 (c); *Daubert,* 509 U.S. at 593-94.

Mr. Leonesio's conclusions regarding deliberate indifference are based almost entirely on the medical and first aid opinions that he was not qualified to give. Additionally, Mr. Leonesio impermissibly asserts a legal conclusion that is the proper province of this court and a jury. Mr. Leonesio summarily concludes that based on the "facts and circumstances" presented, Officer Miller acted with deliberate indifference with respect to Mr. Lakey. This opinion is improper. The

term deliberate indifference used in the context of a 42 U.S.C.§1983 case is defined by case law, and this Court will instruct the jury on the meaning of this phrase. Unlike his police use of force opinion, Mr. Leonesio's experience in law enforcement does not give him the requisite expertise to opine on deliberate indifference. Thus, Mr. Leonesio's opinion regarding deliberate indifference should be excluded because it attempts to define the legal parameters within which the jury must exercise its fact finding mission and he is not qualified to opine on the medical basis for these opinions. Accordingly, to the extent the Defendants seek to exclude Mr. Leonesio's opinions regarding first aid and deliberate indifference, their motions are hereby GRANTED in part.

### b. Tim Tipton

Plaintiffs filed a Motion to Limit or exclude Expert Testimony of Mr. Tim Tipton on the grounds that his opinions regarding the reasonableness of Duggan's use of a chokehold on Jared Lakey improperly invade the province of the jury. [Docket No. 353 at 5]. Plaintiff argues that Tipton's opinions constitute impermissible legal conclusions that should be excluded or limited under *Daubert* and Rule 702. Plaintiff also argues that Mr. Tipton's opinions are unreliable because his expert report states that he did not evaluate the deposition testimony of Defendant Duggan's boss, Sheriff Bryant.

Mr. Tipton is qualified under the standards set forth in Daubert and Rule 702 to opine regarding police use of force. Mr. Tipton is the Commissioner of Public Safety overseeing the Oklahoma Highway Patrol and Department of Public Safety and has over twenty five (25) years of law enforcement experience including developing and implementing use of force practices and officer compliance with policy. [Docket. No. 253-1 p. 18-25]. Many of Plaintiff's objections to Mr. Tipton mirror the objections Lone Grove, Miller, and Duggan raise in objection to Plaintiff's expert Michael Leonesio. Similarly, Mr. Tipton's opinions regarding use of force are admissible.

9

We reject Plaintiff's argument that Mr. Tipton's opinion is unreliable because he failed to consider the deposition testimony of Deputy Duggan's boss, Sheriff Bryant. As the Defendant points out in his briefing, Sheriff Bryant was not present when Deputy Duggan used the neck restraint against Jared Lakey or at any time during the incident giving rise to this litigation. Therefore, it is possible for Mr. Tipton to formulate a reliable opinion on the incident without considering Sheriff Bryant's testimony.

Furthermore, we also find that Mr. Tipton's opinions do not constitute impermissible legal conclusion. For instance, Mr. Tipton asserts that "[i]t is my opinion the use of a properly applied neck restraint was reasonable and proper technique during this event." [Docket No. 253-1 p. 13.] He explains that he reached this conclusion by applying his Oklahoma Highway Patrol training and law enforcement standards more broadly. Police department use of force guidelines must follow the rules set forth by the Supreme Court. Like Mr. Leonesio, Mr. Tipton could not analyze the propriety of the officers' use of force without referencing these standards. Therefore, Mr. Tipton's opinion is not an impermissible legal conclusion simply because he applies standards based in case law.

We also reject the Plaintiff's argument that Mr. Tipton's opinions are conclusory. His opinions are based on his experience and knowledge as a law enforcement officer, and he adequately explains how his expertise leads him to his conclusions. Accordingly, we find that Plaintiff's Motion to Limit or Exclude Expert Testimony of Tim Tipton [Docket. No. 353] is hereby DENIED.

### c. Scott DeFoe

Defendant Duggan objects to Mr. DeFoe's opinions on Duggan's actions during the incident with Jared Lakey. [Docket No. 350 at 5]. The Motion refers specifically to Opinion Number 1 and Opinions 11-16. Accordingly, this Order will address these opinions only. Defendants broadly assert that DeFoe's opinions are impermissible legal conclusions that invade the province of the jury. They also argue that Opinion Number 13 should be excluded because Mr. Defoe does not have medical expertise to opine on the adequacy of the officer's first aid or the whether the medical care provided by the officer's was deliberately indifferent. [Docket No. 350 at 13].

Defendant Duggan argues that Mr. De Foe is not adequately experienced to opine on police practices because he has only worked with two Police Departments both of which were in Southern California. [Docket No. 350 at pp.19-20.] We disagree. Mr. DeFoe joined the Los Angeles Police Department in 1989 and retired in 2010. He served in and supervised special weapons and tactical units, and after retiring, Mr. DeFoe worked as the director of a private security company, a consultant, and a Sheriff's Deputy in Riverside, California. Mr. De Foe, therefore, has decades of experience navigating the appropriate means and circumstances for police use of force as both an officer and a policy maker. Accordingly, we find that he is qualified to render opinions regarding police use of force and policies and training on police use of force.

We find that Mr. DeFoe's opinions meet the standards set forth in *Daubert* and *Kuhmmo*. Mr. DeFoe's opinions are similar to the opinions of the other use of force experts in that they are based on his knowledge and experience, and not a scientific process. Mr. DeFoe adequately explains how his experience informs his opinions, thus making his methodology reliable.

Furthermore, with respect to Mr. De Foe's Opinion 13, where he states that the officers were in his opinion "indifferent" to Mr. Lakey's medical needs, we disagree with Defendants argument that this opinion constitutes an impermissible legal conclusion or that it is a medical opinion and therefore beyond the scope of Mr. DeFoe's expertise. Mr. DeFoe explains what police officers are trained to do when suspect may be having trouble breathing, and why the Defendants conduct did not comply with those standards. [*See* Docket No 237-1 at pp. 43-45]. Mr. De Foe does not attempt to articulate a legal definition of deliberate indifference. He simply opines on the officers' conduct. Therefore, we do not find this opinion improper.

Because Mr. DeFoe is qualified to render the opinions he provides and he adequately explains how his expertise leads him to his opinions, Defendant Duggan's Motion to Exclude Improper Testimony of Plaintiff's Expert Scott DeFoe Based on Daubert Principles [Docket No. 350] is hereby DENIED.

### III. Medical Experts

#### a. Kris Sperry

Defendant Duggan moved to exclude Plaintiff's expert Kris Sperry, M.D. arguing that Dr. Sperry, a board-certified forensic pathologist, is unqualified to opine that the chokehold contributed to Jared Lakey's death. Plaintiff also argues that Dr. Sperry's opinions are unreliable, ipse dixit, unhelpful to a jury, and confusing. [Docket No. 349]. Defendants Lone Grove and Miller also moved to exclude Dr. Sperry and their motion incorporates by reference Defendant Duggan's argument that Dr. Sperry's opinions are confusing, inconsistent, unhelpful, and object to Dr. Sperry's commentary on the video footage. [Docket No. 356]. Dr. Sperry opines that Deputy Duggan's rear neck restraint was a substantial contributing factor in the death of Jared Lakey. [Docket No. 237-3 p.6-7]. He also found that the delay in initiating CPR, Mr. Lakey's posture, the

officers repeated taser discharges, and myocardial infarction also contributed to Mr. Lakey's death. Dr. Sperry is a medical doctor and former Chief Medical examiner for the State of Georgia and his CV includes a long list of other accomplishments in medical and forensic pathology related research. [Docket No. 237-3 p. 9-47].

Plaintiff argues that because Dr. Sperry has no law enforcement training and therefore has no expertise regarding how or when to use a neck restraint, that he is unqualified to render an opinion regarding whether a neck restraint was a causal factor in Mr. Lakey's death. [Docket No. 349 at 10]. We disagree. As the Plaintiff points out, Dr. Sperry does not opine on the propriety or legality of the neck restraint. He only analyzes whether the maneuver contributed to Mr. Lakey's death. This determination is well within the scope of his expertise as a forensic pathologist. Accordingly, Dr. Sperry is qualified to render the opinions he provides in his report.

We also reject Defendant Duggan's arguments that Dr. Sperry's opinions should be excluded because they are unreliable, ipse dixit, unhelpful to a jury, and confusing. Whether Defendant Duggan contributed to Mr. Lakey's death by implementing a neck restraint is relevant to the jury's determination of negligence. Furthermore, we do not find Dr. Sperry's opinions confusing or inconsistent especially considering that they are consistent with the opinion expressed by the Chief Medical Examiner of the State of Oklahoma. Dr. Sperry adequately explains why based on the facts presented to him he reaches the conclusions his opinions. Accordingly, Defendant Lone Grove and Miller's Motion to Exclude [Dkt. No. 356] is hereby DENIED and Defendant Duggan's Motion to exclude Kris Sperry [Dkt. No. 359] is likewise DENIED.

b. Stacy Hail

Plaintiff moved to exclude the expert medical opinion of Dr. Stacey Hail [Docket No. 352]. Defendants Dingman and Taylor retained Dr. Hail to opine on the possibility that intoxication contributed to Jared Lakey's Death. Specifically, Plaintiff objects to the following of Dr. Hail's opinions: that psychoactive drugs could not be ruled out as a cause of Jared Lakey's behavior and cardiac arrest and that officers at the scene rendered appropriate first aid. [Docket No. 352, pp. 1-2]. Plaintiff argues that Dr. Hail's opinion does not have a "traceable, analytical basis and objective fact". [Docket No. 352 citing *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005).] Specifically, Plaintiff objects to the fact that Dr. Hail asserts that she reached her opinion through differential diagnosis.

Dr. Hail is a Medical Doctor who specializes in Emergency Medicine and Medical Toxicology and has significant experience recognizing and diagnosing psychiatric crisis and drug and alcohol intoxication. [Docket No. 252-1 at pp. 1-2]. Therefore, Dr. Hail is qualified render an opinion on whether Mr. Lakey was potentially intoxicated at the time of the events giving rise to this litigation and how that intoxication may have contributed to his death. Regarding the reliability of Dr. Hail's opinion, we find that it reliable pursuant to Rule 702. Dr. Hail concludes that intoxication from a novel psychoactive substance or and uncommon hallucinogenic substance cannot be ruled out. Hail also opines that the first aid provided by officers at the scene was adequate. In reaching this conclusion, Dr. Hail analyzed body camera footage from the scene, pleadings, 911 dispatch calls, discovery calls, medical records, Tulsa police department reports, criminal trial transcript, expert witness endorsements, the OSBI reports, medical records, the medical records report, witness statements, and scene photos. [Docket No. 252-1 at pp. 2-3]. In her report, Dr. Hail provides several other potential causes for Mr. Lakey's death and cites to

14

multiple peer reviewed studies regarding positional asphyxia, tasers, stress cardiomyopathy, and the medical implications of delayed CPR. *Id*. at 17-24. Dr. Hail adequately explains how her expertise led her to her opinions, and we therefore find that Dr. Hail's testimony is reliable for the purposes of Federal Rule 702 and *Daubert*. Therefore, Plaintiff's Motion to Exclude Dr. Hail [Docket No. 352] is hereby DENIED.

## Conclusion

In summary, Defendants City of Lone Grove and Terry Miller to Exclude Anticipated Testimony of Michael Leonesio and Brief in Support [Docket. No. 348] and the Motion to Exclude Expert Testimony of Michael Leonesio by David Duggan [Docket No. 355] are GRANTED in part and DENIED in part as explained above; Plaintiff's Motion to Exclude or Limit Expert Testimony of Tim Tipton [Docket No. 353] is hereby DENIED; Defendant Duggan's Motion to Exclude Improper Testimony Scott DeFoe [Docket. No. 350] is hereby DENIED. Defendant Duggan's Motion to Exclude Plaintiffs' Expert Kris Sperry [Docket No. 349] and Defendants Lone Grove and Terry Miller's Motion to Exclude Anticipated Testimony of Kris Sperry [Docket No. 356] are both hereby DENIED; and Plaintiff's Motion in Limine to Limit or Exclude Expert Opinion of Stacey Hail [Docket No. 352] is hereby DENIED.

Dated this 8th day of February, 2024.

*Ronald A. White*
Ronald A. White
United States District Judge
Eastern District of Oklahoma

15