IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA LAKEY and DOUGLAS LAKEY, as co-Special Administrators for the Estate of Jared Lakey, <br><br> *Plaintiffs*, <br><br> v. <br><br> 1. CITY OF WILSON, <br> 2. JOSHUA TAYLOR, in his official and individual capacities, <br> 3. BRANDON DINGMAN, in his individual capacity, <br> 4. CHRIS BRYANT, in his official and individual capacities as Sheriff of Carter County, <br> 5. DAVID DUGGAN, in his individual capacity, <br> 6. LONE GROVE, <br> 7. TERRY MILLER, in his individual capacity, and <br> 8. KEVIN COOLEY, in his official and individual capacities, <br><br> *Defendants*. | Case No. CIV-20-152-RAW |

**ORDER**

Before the court is the Motion for Summary Judgment and Brief in Support by Chris

Bryant in his individual capacity [Docket No. 376] Motion for Summary Judgment and Brief in

1

Support by Chris Bryant in his Official Capacity [Docket No. 377]; and Amended Motion for Summary Judgment and Brief in Support by Lone Grove [Docket No. 385].

## I. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Sidlo* v. *Millercoors, LLC*, 718 Fed.Appx. 718, 725 (10th Cir.2018). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Doe* v. *City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir.2012). In weighing the proof, this court should "not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *Marquez* v. *City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) quoting *Questar Pipeline Co.* v. *Grynberg*, 201 F.3d 1277, 1284 (10th Cir. 2000).

## II. Sheriff Bryant

Chris Bryant was the Sheriff of Carter County at the time of the incident giving rise to this litigation. The Carter County Sheriff's Office employed Deputy Duggan the officer who placed Mr. Lakey in the LVNR. Plaintiff sued Sheriff Bryant in both his individual capacity and his official capacity. He has moved both in his individual capacity and his official capacity for summary judgment. [Docket No. 376 and 377]. A reasonable jury could find that Sheriff Bryant maintained a policy or custom of mutual aid that ultimately harmed Mr. Lakey and that Sheriff Bryant was deliberately indifferent to the risk of such harm.

2

### a. Standard for Individual Liability

It is undisputed by the parties, and the record shows that Sheriff Bryant was not present during the incident with Jared Lakey, and thus his liability for the incident if any rests on his supervisory role. *Trujillo* v. *Williams*, 465 F.3d 1210, 1227 (10th Cir.2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."); *Novitsky* v. *City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007). To sustain a §1983 cause of action against a supervisor, a Plaintiff must satisfy three elements: (1) personal involvement; (2) causation; and (3) state of mind. *Estate of Booker* v. *Gomez*, 745 F.3d 405, 435 (10th Cir. 2014).

The first element, personal involvement can be met "by demonstrating [a defendant] promulgated, created, implemented [,] or possessed responsibility for the continued operation of a policy… provided the policy or custom resulted in a violation of the plaintiff's constitutional rights." *Burke* v. *Regalado*, 935 F.3d 960, 997 (10th Cir. 2019). The second element requires the plaintiff show "that the defendant's alleged action(s) caused the constitutional violation" by setting "in motion a series of events that the defendant knew or should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider* v. *City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013). Finally, the third element is met when the plaintiff can show that the defendant "took the alleged actions with the requisite state of mind" which "can be no less than the mens rea required" of the subordinates to commit the underlying constitutional violation. *Estate of Booker*, 745 F.3d at 435 citing *Porro* v. *Barnes*, 624 F.3d 1322, 1328 (10th Cir.2010). The third element can be met by a showing that the supervisor acted with deliberate indifference. In this context, "deliberate indifference is a strict standard… requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Burke*, 935 F.3d at 997. Whether an

"official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ...." *Farmer* v. *Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

### b.  Standard for Liability in his Official Capacity

The Estate's official capacity claim against Sheriff Bryant, "represents only another way of pleading an action against an entity of which an officer is an agent. *Burke*, 935 F.3d at 998 quoting *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To enforce liability against Sheriff Bryant in his official capacity, the Plaintiff, must show "(1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy and custom and the injury alleged." *Jensen* v. *W. Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (internal citations omitted). Municipal policy includes policy statements, ordinances, regulations, and the individual decisions of city officials who have "final policy making authority" *David* v. *City and Cty. of Denver*, 101 F.3d 1344, 1357 (10th Cir. 1996).  Liability may also be imposed when policymakers ratify or approve of their subordinate's wrongful conduct. *Carney* v. *City and Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

### ANALYSIS

### 1.  Supervisory Liability

In the present case, the Plaintiff has provided sufficient evidence to support a claim for supervisory liability under §1983 against Sheriff Bryant in his individual capacity. With respect to the first element, there is no dispute that Sheriff Bryant was not personally involved in the incident with Mr. Lakey. Instead, Plaintiff argues that the violation of Mr. Lakey's rights was caused by the policies and practices promulgated or maintained by Sheriff Bryant. Plaintiff argues that the

mutual aid policy and an unofficial practice of allowing excessive force caused Mr. Lakey's injuries.

We have already held that a reasonable jury could find that Deputy Duggan's conduct constituted excessive force in violation of Mr. Lakey's constitutional rights. Therefore, Defendant Bryant is not entitled to summary judgment on the grounds that there is no underlying constitutional violation by his subordinate Deputy Duggan.  Furthermore, Plaintiff argues that the Court should infer the existence of additional facts and evidence suggesting that Sheriff Bryant approved of Deputy Duggan's conduct because of the destruction of the cell phone discussed in Plaintiff's Motion for Spoliation Sanctions. [Docket No. 336]. That motion was denied [Docket No. 424] and this Court's decision is based on the evidence in summary judgment record.

The record does not show that there is a pattern of allowing unconstitutional force from which a jury could infer an unofficial policy of permitting excessive force. However, a reasonable jury could find that the Mutual Aid policy maintained by Sheriff Bryant caused Mr. Lakey's injuries. The Mutual Aid policy states that "[r]equests from other law enforcement agencies, whether municipal, state, or federal, for back-up personnel or other assistance will be honored by the Carter County Sheriff's Office whenever the request is of an urgent nature". [Docket No. 405-10]. Sheriff Bryant testified that he knew prior to this incident that officers Dingman and Taylor had a reputation for not providing adequate backup to Carter County officers who aided the two Lone Grove officers pursuant to the policy.  In his deposition, Sheriff Bryant acknowledged that continuing the policy put both his deputies and Mr. Lakey at risk because deputies may have felt compelled to use more force than usual to compensate for the lack of adequate back up. [Bryant Deposition, Docket No. 406-8 p. 127-130].

5

Sheriff Bryant testified that he was also aware of rumors that Officer Taylor had a reputation for mishandling situations where he may have to go "hands on" with a suspect. *Id* at 135-140. Deputy Duggan testified that he used the LVNR against Mr. Lakey is because he did not trust officers Dingman and Taylor to assist him if less forceful means of apprehending Mr. Lakey failed. In the light most favorable to the Plaintiff, a reasonably jury could find that continuing the Mutual Aid policy despite the concerns regarding the Lone Grove officers caused Deputy Duggan to be in a position where he felt obligated to use excessive force thus violating Mr. Lakey's rights.

Furthermore, a reasonable jury could find, that Sheriff Bryant was deliberately indifferent to the risks of continuing the Mutual Aid policy without providing additional officer training. Deliberate indifference requires a plaintiff to show that the defendant "knew or should have known of the misconduct, and yet failed to act to prevent future harm". *McClelland* v. *Facteau*, 610 F.2d 693, 697 (10th Cir. 1979). The standard to be applied is the conduct of a reasonable person, under the circumstances, in the context of his authority and what he knew or should have known. "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke* v. *Regalado*, 935 F.3d 960, 997–98 (10th Cir. 2019) citing *Hollingsworth* v. *Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (quotations omitted).

Defendant Bryant acknowledged that the mutual aid policy posed a risk to his officers and to Mr. Lakey. [Bryant Deposition, Docket No. 406-8 p. 127-130]. While the mutual aid policy was clearly not the sole cause of the incident, a reasonable jury could find that violating a suspect's constitutional rights was "a known or obvious consequence" of maintaining a policy that put both officers and the public in danger. *Burke*, 935 F.3d at 997. Sheriff Bryant knew that the two Wilson

6

officers, Dingman and Taylor, created unsafe situations for his deputies. Instead of altering the policy or providing additional training to his officers on how to manage situations with inadequate backup, Sheriff Bryant continued the policy and provided no additional training. Thus, a reasonable jury could find that Sheriff Bryant should be held liable in his individual capacity because he knew that this policy would cause harm and yet failed to act, thus causing Mr. Lakey's injuries.

## 2. Qualified Immunity

Defendant Bryant asserts that he is entitled to qualified immunity on the Plaintiff's claims against him in his individual capacity. [Docket No. 376]. Qualified immunity "protects public officials from individual liability in a § 1983 action unless the officials violated 'clearly establish … constitutional rights of which a reasonable person would have known.'" *Workman* v. *Jordan*, 32 F.3d at 478 (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). At the summary judgment phase, the plaintiff must show that the defendant (1) violated a constitutional right and (2) that the right was clearly established. *Estate of Booker*, 745 F.3d 411. When determining whether a right was clearly established, there must be a Supreme Court or Tenth Circuit decision, or the clearly established weight of authority form other courts must have found that the conduct was unlawful". "Under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan* v. *Cotton.* 572 U.S. 650, 656 (2014). Courts must, therefore, not define a case's context for the purposes of clearly established rights in a manner that imports genuinely disputed factual propositions. *Id*. "Although the very action in question does not have previously been held unlawful, 'in light of pre-existing law the unlawfulness must be apparent.'" *Albright* v. *Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.

1995) (quoting *Anderson* v. *Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

As discussed, a reasonable jury could find that Defendant Bryant by continuing the mutual aid policy and failing to properly train his deputies, violated Mr. Lakey's rights. Plaintiff failed to show that maintaining the policy clearly violated Mr. Lakey's established rights at the time of the challenged conduct. Plaintiff does not provide any case law supporting its argument that it was clearly established that Defendant Bryant's actions in his individual capacity violated Mr. Lakey's rights. Plaintiff only argues that because Duggan violated clearly established law that Sheriff Bryant also violated clearly established law by continuing a policy that caused the violation. We disagree. "Section 1983 is not a vicarious liability provision" and the "plaintiff must demonstrate the liability of each supervisory official against whom a claim is made". *Serna* v. *Colorado Dep't of Corr*., 455 F.3d 1146, 1155 (10th Cir. 2006). In the light most favorable to the Plaintiff, Sheriff Bryant maintained a policy that may have created an additional risk of harm to officers and the public but had not previously resulted in any excessive force or constitutional violations. An officer, Deputy Duggan used excessive force to mitigate the risks that were caused in part by the policy. Plaintiff has not provided any case law suggesting that that this conduct violated clearly established law at the time of the conduct. Thus, Sheriff Bryant in his individual capacity is entitled to qualified immunity.

Therefore, Sheriff Bryant's in His Individual Capacity's Motion for Summary Judgment is hereby GRANTED on the grounds of qualified immunity [Docket No. 376].

3.  **Official Capacity Claims**

Plaintiffs have sued Sheriff Bryant both in his individual capacity and in his official capacity as Sheriff of Carter County under §1983. Because the Plaintiff does not allege that Sherriff Bryant personally participated in the underlying alleged constitutional violations against Mr. Lakey, the elements of the two claims are substantially the same. Plaintiff must show that Sheriff Bryant "promulgated, created, implemented [,] or possessed responsibility for the continued operation of a policy" that caused a violation of the plaintiff's constitutional rights. *Burke* v. *Regalado*, 935 F.3d 960, 999 (10th Cir. 2019). Both theories of liability require a (1) causal relationship between a policy or custom and (2) deliberate indifference. *Id*. Thus, for the purposes of this case the elements of supervisory responsibility are the same as Sheriff Bryant's liability as an official or policy maker.

For substantially the same reasons that we find that there is sufficient evidence regarding supervisory liability, we also find the same of official capacity liability. A reasonable jury could find that Sheriff Bryant maintained a mutual aid policy that made it more likely that his officers would encounter situations where they felt that using excessive force was their only option. A reasonable jury could find that failing to alter the policy despite being aware of the dangerous behavior of Officers Taylor and Dingman caused Deputy Duggan to violate Mr. Lakey's rights.

### 4. Failure to Train

Plaintiff argues that Sheriff Bryant should be held liable in his official capacity for failing to adequately train Deputy Duggan. To sustain a claim for §1983 liability on a failure to train the Plaintiff must prove "(1) the existence of a county policy or custom involving deficient training [;] (2) the policy or custom's causation of an injury [;] and (3) the city's adoption of a policy or custom with deliberate indifference. *Waller* v. *City & Cty. of Denver*, 932 F.3d 1277, 1283–84 (10th Cir.

9

2019). It is not enough for plaintiffs to show that there were general deficiencies in the City's training program. Instead, the Plaintiff must identify the specific deficiency in the county's training program closely related to his ultimate injury and the Plaintiff must prove that the deficiency in training caused the officer to act with deliberate indifference to his safety. *See City of Canton* v. *Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In the context of failure to train, deliberate indifference can exist when municipality fails to train officers how to handle recurring situations presenting an obvious potential to violate the Constitution. *Allen* v. *Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997). When analyzing the third prong, the Tenth Circuit has developed the following test: the policymakers (1) knew to a moral certainty that officers would confront a particular situation, (2) the situation presents the officer with a difficult choice that training would assist them in making; and (3) making the wrong choice in this situation frequently results in a citizen's deprivation of rights. *Lance* v. *Morris*, 985 F.3d 787, 802 (10th Cir. 2021). The three part test utilized by the tenth circuit provides a "way to determine whether a particular problem will recur enough to alert county officials to an obvious deficiency in the training". *Lance*, 985 F.3d at 802. "In most instances this can be established by proving the existence of a tortious pattern of conduct." *Barney* v. *Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir.1998).

In the present case, Plaintiff argues that the Sherriff allowed deputies to use "stranglehold's without any recent training", however there is no evidence that the Carter County Sheriff's Office authorized it's officers to use the Lateral Ventricular Neck Restraint ("LVNR") or any other maneuver that could be described as a stranglehold. However, as we have discussed, Sheriff Bryant knew the risks of continuing the Mutual Aid policy and sending his deputies to assist Lone Grove police officers that were either unable or unwilling to back up his deputies. Additional training

10

could have helped his deputies manage such situations without risking the health of the public. There is evidence in the record from which a reasonable jury could infer that Sheriff Bryant knew that assisting the Lone Grove police routinely put his deputies in situations where they would be more likely to use excessive force and did not provide them with additional training on how to mitigate these risks. Triable issues of fact exist regarding the extent to which Defendant Bryant knew that this policy would present such a risk and whether additional training could have mitigated such risks. Therefore, Defendant Bryant in his official capacity is not entitled to summary judgment on Plaintiffs' § 1983 claims arising out of failure to train.

### 5.     State Law Excessive Force Claim.

Defendant Bryant, in his official capacity also moved for Summary Judgment on the Plaintiff's state law excessive force claim. [Docket No. 377 p. 20]. Sheriff Bryant argues that he is entitled to immunity under the Oklahoma Governmental Tort Claims Act ("OGTCA" or "The Act"), Okla. Stat 51 § 151, *et. seq*. Under Oklahoma law, the OGTCA is the exclusive remedy for a plaintiff to recover against a governmental entity in tort. *Watkins* v. *Central State Griffin Memorial Hospital, Okla*., 377 P.3d 124 (2016). When a government employee commits a tort while acting within the scope of their employment, the government is vicariously liable for the tort as their employer. *Teeter* v. *City of Edmond*, 85 P.3d 817, 2004 OK 5, ¶ 21. Scope of employment under the Act is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation." Okla. Stat. tit. 51, § 152 (12).

Defendant Bryant argues that because Deputy Duggan's use of force was a violation of Sheriff's office use of force policy, his actions fell outside the scope of his employment and

therefore Defendant Bryant in his Official Capacity is immune under the OGTCA. We disagree. The Supreme Court of Oklahoma has held that an employee's torts are within the scope of employment if the act giving rise to the complaint "was done for the purpose of doing the work assigned" by the employer. *Rodebush* v. *Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 13, 867 P.2d 1241, 1246; citing *Mistletoe Express Serv.* v. *Culp*, 353 P.2d 9 (Okla.1959). This rule encompasses instances when the employee acts beyond the given authority. *Id*. *Patsy Oil & Gas Co.* v. *Odom*, 186 Okl. 116, 96 P.2d 302 (1939). For instance, in *Patsy*, the employer was held responsible for the employee taking a dynamite cap to an oil and gas well even though the employer did not authorize the use of dynamite on the rig. *Id*. Thus, an employee is not taken out of the scope his employment merely for violating employer policies.

In the present case, the LVNR Duggan employed was not an authorized maneuver under the Carter County Sheriff's office policies. Nevertheless, Deputy Duggan employed the LVNR in the process of trying to assist the Wilson officers' arrest of Mr. Lakey. This action was clearly taken pursuant to his assigned work as a Sheriff's Deputy. Thus, the mere fact that using the LVNR may have violated county policy does not take his actions outside the scope of his employment. Therefore, Defendant Bryant, in his official capacity is not entitled to immunity from Plaintiff's state law claims.

Therefore, Sheriff Bryant's in His Official Capacity's Motion for Summary Judgment is hereby DENIED [Docket No. 377].

### III.    City of Lone Grove

Defendant Lone Grove Plaintiff sued the City of Lone Grove for the conduct of its employee, Officer Miller on the night of the incident with Mr. Lakey. To sustain a claim against

12

the City, the Plaintiff is required to demonstrate that Officer Miller violated Mr. Lakey's constitutional rights and that he acted in a way that implemented a City policy or custom. We have already held that Officer Miller is not entitled to summary judgment for the claims Plaintiff has alleged against him. Therefore, the City of Lone Grove is not entitled to summary judgment on the Plaintiff's claims on a theory that Officer Miller's conduct did not violate Mr. Lakey's constitutional rights. *See Emmet* v. *Armstrong*, 973 F. 3d 1127, 1139 (10th Cir. 2020) (Holding that because a district court's finding that no excessive force was used should be overturned, that logically, the grant of summary judgment against for supervisory liability for the same violation should also be overturned.)

The Plaintiff specifically asserts a §1983 claim against the City of Lone Grove based on (1) a policy or practice of excessive force and (2) another claim based on a failure to train resulting in Officer Miller's alleged deliberate indifference to Mr. Lakey's serious medical needs. [Docket No. 113].

1. **Summary Judgment Regarding Lone Grove's Liability for Officer Miller's Use of Force**.

The standard for holding the City of Lone Grove liable for Officer Miller's conduct is the same standard applied to Sheriff Bryant in his official capacity. *Supra* p. 4. Whether the City of Lone Grove is liable for any constitutional violation by Miller depends on (1) the existence of a municipal policy or custom, and (2) whether there is a direct causal link between the policy or custom and the injury alleged. *Bryson* v. *City of Okla.* City, 627 F.3d 784, 788 (10th Cir. 2010).

Plaintiff alleges that Officer Miller's unconstitutional conduct is linked to "a written policy or unwritten practice that authorized police officers to use force that is unreasonable considering the totality of circumstances facing the officer" or that the policies are so "vague that it authorized the

13

use of excessive force as applied to Jared." [Docket No. 87 ¶356, 357]. The Plaintiff also argues that Lone Grove admitted that Officer Miller acted in accordance with policy on the evening of the incident, thus implying that he was carrying out a policy of the city. [ Docket No 398 p. 19]. In response to the Plaintiff's request for admission: "Each use of force by Terry Miller against Jared Lakey was consistent with Lone Grove's written policy or unwritten practice". The City objected to the use of the term "use of force", but otherwise admitted that "Miller's conduct with respect to the incident was deemed consistent with Lone Grove Police Department policies and practice" [Docket No. 406-2 Lone Grove Responses to Requests for Admission.]

In support of its argument, the Plaintiff does not provide any binding precedent, but does point to points to cases from other circuits and district court cases that we ultimately find persuasive. In *Kersh*, a Fifth Circuit case, a municipality stipulated to the fact that the officer complied with city customs and policies during the allegedly unconstitutional conduct at issue. *Kersh* v. *Derozier*, 851 F.3d 1509, 1513 (5th Cir. 1988). Therefore, because the jury found that the officer violated the plaintiff's rights, the court held that the customs and policies of the city necessarily violated the plaintiffs' rights. Plaintiff also cites to several district court cases including *Strachan* v. *City of Federal Heights, Colo*, 837 F. Supp. 1086, 1092 (D.Colo. 1993). In *Strachan*, the defendant City admitted that the allegedly unconstitutional conduct by the officers in that case was "in conformance with the custom and policy of the City". *Id* at 1092. Federal Rule of Civil Procedure 36(b) states that "[a]ny matter admitted under this rule is conclusively established". Thus, the court held it was conclusively established that the officers conduct was in conformance with city policy. Therefore, the court denied the city's motion for summary judgment holding that the plaintiff's §1983 claim against the city could survive because plaintiff's injury stemmed from a then existing

municipal policy or custom. The court also noted that this finding should not be interpreted as an admission that the officer's conduct was unconstitutional. *Id*.

Similarly, here, the City of Lone Grove may be liable if Mr. Lakey's injuries were the result of an unconstitutional policy or custom. The City admitted that "Officer Miller's actions conduct with respect to the incident was deemed consistent with Lone Grove Police Department policies and practice". We have already held that a reasonable jury could find that Officer Miller's conduct violated Mr. Lakey's rights. Therefore, because the City admitted that Officer Miller acted in compliance with City policies, a reasonable jury could find that the Lone Grove policies caused Mr. Lakey's injuries to the same extent that Officer Miller did. Thus, Defendant's Motion for Summary Judgment as to these claims [Docket No. 385] is hereby DENIED in part.

**2. The City of Lone Grove's Liability for Failure to Train.**

The standard for governmental liability for failure to train is set forth *Supra* p. 9. In the present case, the Plaintiff does not point to any specific deficiency in the City's training program that can be tied to Mr. Lakey's injuries. Plaintiff alleges that Officer Miller was trained to withhold CPR until EMS arrives, but there is no support for this assertion in the record. Additionally, Officer Miller initiated CPR before EMS arrived. While it is true that his delayed response to Mr. Lakey's medical needs may have amounted to a violation of Mr. Lakey's constitutional rights, the delay cannot be directly tied to any training program was closely related to these actions. "Officers who are well trained are not free from error". *City of Canton, Ohio* v. *Harris*, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989). Plaintiff suggests that additional training would have helped avoid the harm to Mr. Lakey but suggesting more or better training is not sufficient to show that the City's existing training was deficient or caused the harm at issue. *See City of Canton, Ohio*

15

v. *Harris*, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989) ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.") Furthermore, there is no evidence in the record indicating that the City enacted any of its training policies with any actual or constructive knowledge that such policies were "substantially certain to result in a constitutional violation". *Bryson* v. *City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010).

Finally, there is no evidence that the City adopted any of its policies with deliberate indifference. There is no evidence that the training the City provided had caused any violations of an arrestee's rights prior to this incident. To the extent that the City knew that officers would encounter this situation, they arguably prepared them adequately by providing CPR training. Therefore, Defendant Miller's Motion for Summary Judgment is hereby GRANTED in part as to the Plaintiff's failure to train claims.

## Conclusion

In sum, the Motion for Summary Judgment and Brief in Support by Chris Bryant in his individual capacity [Docket No. 376] is hereby GRANTED. The Motion for Summary Judgment and Brief in Support by Chris Bryant in his Official Capacity [Docket No. 377] is hereby DENIED; and the Amended Motion for Summary Judgment and Brief in Support by Lone Grove is GRANTED in part and DENIED in part as outlined above [Docket No. 385].

IT IS SO ORDERED THIS 16th DAY OF MAY, 2024.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE