## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA LAKEY and DOUGLAS LAKEY, as co-Special Administrators for the Estate of Jared Lakey, | |
| *Plaintiffs*, | |
| v. | Case No. CIV-20-152-RAW |
| 1. CITY OF WILSON,<br>2. JOSHUA TAYLOR, in his official and individual capacities,<br>3. BRANDON DINGMAN, in his individual capacity,<br>4. CHRIS BRYANT, in his official and individual capacities as Sheriff of Carter County,<br>5. DAVID DUGGAN, in his individual capacity,<br>6. LONE GROVE,<br>7. TERRY MILLER, in his individual capacity, and<br>8. KEVIN COOLEY, in his official and individual capacities, | |
| *Defendants.* | |

## ORDER

Motion for Summary Judgment and Brief in Support by David Duggan [Docket No. 378];

Amended Motion for Summary Judgment and Brief in Support by Terry Miller [Docket No. 384].

### Factual Background

On the evening of July 4, 2019 Jared Lakey ("Lakey") was at the home of Kody Helms in Wilson, Oklahoma. Kody Helms testified that Mr. Lakey appeared upset and angry that evening. [Dkt. No. 378-3 at pp. 45-54.] After some arguing, Mr. Lakey left the house.

Around 11:49 p.m. 911 dispatch received a call about a man who was potentially naked running down the street. It was Mr. Lakey. Wilson Police Officer Joshua Taylor arrived at the scene around 11:56 p.m.. Three minutes later Officer Dingman arrived. The two officers claimed that Mr. Lakey was resisting arrest and stated, in their requests for backup that they used their tasers on Mr. Lakey. However, it is undisputed between the parties that Dingman and Taylor lied to the other officers that night and stated that they tased Mr. Lakey three or four times when they tased him approximately fifty times. Officer Dingman and Officer Taylor were subsequently found guilty of murder in the second degree for the Mr. Lakey's death.

### Deputy Duggan's Involvement in the Incident

Deputy Duggan was working for the Carter County Sheriff's office on the night of July 4, 2019.[1] Prior to arriving at the scene with Jared Lakey, Deputy Duggan heard the same dispatch report that officer Taylor heard about a man running down the road. There is some dispute between the parties regarding what exactly Duggan heard over the radio prior to arriving at the scene because Duggan was assisting on another matter when the initial call came through. Dingman can be heard in his body camera footage stating that Mr. Lakey was combative and that the officers had tased him twice. Plaintiff disputes the fact that Duggan actually heard this information over the radio as it is not mentioned specifically in his report or OSBI investigation.

---

[1] Deputy Duggan was worked previously with the Oklahoma Highway patrol in 2005. During that time, he received training related to the vascular neck restraint from the Oklahoma Highway Patrol basic academy.

Duggan testified that he believed that Mr. Lakey had been resisting arrest when he got to the scene. [Dkt. No. 378-1 pp. 8-9]. When Mr. Duggan arrived, he was told by Officer Dingman that Lakey had been tased four times and was not giving up. [Docket No. 378-9 Timestamp 0:00:16]. When deputy Duggan arrives on the scene, Mr. Lakey can be seen in the video laying on his back in the grass and then slowly sitting up as Dingman walks over with Duggan. [Synchronized 0:00: 10]. Mr. Lakey is sitting when Duggan arrives, but he is not handcuffed. He is also naked and clearly unarmed. Duggan then walks behind Mr. Lakey and places him in a lateral vascular neck restraint ("LVNR") which made Mr. Lakey unconscious for 3-4 seconds. He continued to hold on to Mr. Lakey's neck until the other officers handcuffed him, but Duggan testified that he was no longer placing the same amount of pressure on Mr. Lakey's neck. In total, Deputy Duggan was on top of Mr. Lakey for around 45 seconds. [Docket No. 378-9 0:01:05 to 0:01:49]. After he was cuffed, the officers sat Mr. Lakey up with his hands behind his back. Deputy Duggan testified that he believed that Lakey would fight back if an officer attempted to handcuff him. [Docket No. 418 pp. 3-4].

### Officer Miller's Involvement

Officer Miller testified that prior to arriving on the scene, he heard the radio traffic from Taylor and Dingman asserting that Jared had been combative. When Miller arrived at the scene the other officers suggested that he put on gloves to assist handcuffing Mr. Lakey. Therefore, he did not see that Mr. Lakey was sitting calmly on the ground prior to Duggan's LVNR. When he first saw Mr. Lakey, deputy Duggan had him in a the LVNR and the other two officers were putting the handcuffs on him. Officer Miller placed his foot on Jared's ankle to control who he believed to be a combative suspect. Once the officers handcuff Mr. Lakey they sit him up, use the burbing

technique to help him regain consciousness, and radioed for EMS. [Dkt. No. 385 at p.6 paragraph 51].

Once Mr. Lakey was upright and conscious, Miller asserts that he placed his hand on his back and attempted to hold his head upright to keep the airway clear. Officer Miller contends that there was confusion among the officers as to whether Jared was breathing and when he may have stopped breathing. At some point Duggan asks if Jared is still breathing, and Miller replies, quickly, that he is not. OSBI Combined Video 19:13-14. Miller requests the other officers ask EMS to speed up, and then continues to rub Jared's sternum to stimulate breathing. After this he again tries to hold up Jared's head and the officers try hitting Mr. Lakey on the back to rouse him. Officer Miller also holds up Jared's head, and officer Taylor took a picture with Jared's head in what the Plaintiff describes as a "trophy shot". Then, he attempts again to slap Lakey on the face to rouse him. Miller then checks Jared's pupils. Narcan is then administered twice. OSBI Combined View video, 20:16- 21:01. Dingman then asks Miller if they should start CPR. Then the two remove Lakey's handcuffs and initiate CPR. Officer Miller testified that he has never been trained in the LVNR technique and was therefore not knowledgeable regarding the appropriate procedures to employ after an LVNR.

Plaintiff's expert Dr. Sperry has testified that it was proper for the officers to confirm that Mr. Lakey was not breathing and remove his handcuffs prior to administering CPR. Once emergency medical services arrived, officer Miller assisted the paramedics by holding an IV bag. OSBI Combined View video 33:29-43:19. Miller stayed with Mr. Lakey until he was transported to Healdton Mercy Hospital. Mr. Lakey was subsequently moved to OU Medical center where he passed away on July 6, 2018. The medical examiner states that his cause of death was "complications of myocardial infarction, (clinical) in the setting of cardiomegaly and critical

4

coronary atherosclerosis and law enforcement use of conducted electrical weapon and restraint". Docket No. 385-2.

## I.      Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Sidlo* v. *Millercoors*, LLC, 718 Fed.Appx. 718, 725 (10th Cir.2018). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Doe* v. *City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir.2012). In weighing the proof, this court should "not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *Marquez* v. *City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) quoting *Questar Pipeline Co.* v. *Grynberg*, 201 F.3d 1277, 1284 (10th Cir. 2000).

## II.     Qualified Immunity

### a.       The Notwithstanding Clause

We will start by addressing Plaintiff's novel argument that Qualified Immunity should be overturned. (See ECF Doc. #399). This Court must reject Plaintiff's argument as it bound by stare decisis to follow decades of Supreme Court and Tenth Circuit case law which acknowledge the validity of applying qualified immunity when relevant to §1983 claims.

Plaintiff argues that qualified immunity should be overturned because the doctrine contradicts the "Notwithstanding Clause" of § 1983 of the Civil Rights Act. [Docket No. 399 3-7]. This language, Plaintiff argues, prevents courts from applying state common law defenses, such as qualified immunity to §1983 cases. [Docket No. 399 at 3]. The original text of Section 1 of Congress's 1871 Civil Rights act, in pertinent part states as follows:

> That any person who, under color of any law, statue, ordinance, regulation, custom or usage of any state, shall subject or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights … <u>shall, any such law, statue ordinance, regulation, custom, or usage of the state to the contrary notwithstanding, be liable to the party injured</u>.

ECF Doc. 399 at 3 citing 17 Stat., §1 (1871).

Plaintiff argues that the underlined language which was subsequently omitted from the U.S.C. would bar the application of qualified immunity, a state common law doctrine, to §1983 cases. Both the Supreme Court and the Tenth Circuit Court of Appeals have repeatedly upheld the application of qualified immunity to §1983 cases. *See generally*, *Pearson* v. *Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Apodaca* v. *Raemisch,* 864 F.3d 1071, 1076 (10th Cir. 2017). Stare decisis is the "foundation stone of the rule of law … any departure from the doctrine demands special justification." *Michigan* v. *Bay Mills Indian Cmty*., 572 U.S. 782, 798 (2014). The Plaintiff does not provide a single example of binding or persuasive case law where a federal court applies the rule of law for which it argues. As such, this Court is bound by both Supreme Court and Tenth Circuit precedent recognizing that qualified immunity may apply to § 1983 cases. There is simply no precedent for interpreting the "Notwithstanding Clause" to mean that the doctrine of qualified immunity does not apply in the context of §1983 of the Civil Rights Act.  Thus, this Court rejects Plaintiffs' argument that qualified immunity should be overturned.

b.      **Background Law on Qualified Immunity.**

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker* v. *Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (ellipsis in original) (quotations and citation omitted). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix* v. *Luna*, 577 U.S. 7, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments....'" *City & Cty. of San Francisco* v. *Sheehan*, 575 U.S. 600, 135 S.Ct. 1765, 1774, 191 L.Ed.2d 856 (2015) (quoting *Ashcroft* v. *al–Kidd*, 563 U.S. 731, 744, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

"Thus, at summary judgment, we must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker*, 745 F.3d at 411; see also *Gross* v. *Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.) *Gutierrez* v. *Cobos*, 841 F.3d 895, 900–01 (10th Cir. 2016). "Courts have discretion to decide the order in which to engage the[ ] two [qualified immunity] prongs." *Tolan*, 134 S.Ct. at 1866 (quoting *Pearson* v. *Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan* v. *Cotton*, 572 U.S.650, 656 (2014). Accordingly, courts must take care not to define a case's "context" for the purposes of clearly established rights in a manner that imports genuinely disputed factual propositions. *Id.* citing *Brosseau* v. *Haugen*, 543 U.S. 194, 198,

7

125 S.Ct. 596 (2004) (inquiring as to whether conduct violated clearly established law "'in light of the specific context of the case'" and construing "facts ... in a light most favorable to" the nonmovant).

### III.     Fourth Amendment Excessive Force

To succeed under section 1983 on a violation of the Fourth Amendment excessive force theory, the plaintiff must show the officers used greater force than would have been reasonably necessary to effect a lawful arrest. *Lynch* v. *Bd. of County Commissioners of Muskogee County*, 2019 WL 423382, *3 (10th Cir.2019). "When a Plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan*, 572 U.S. at 656. "To state a claim for excessive force under the Fourth Amendment, Plaintiff's must show that both a seizure occurred, and that said seizure was 'unreasonable'". *Thomas* v. *Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (emphasis in original), quoting *Childress* v. *City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000).490 U.S. 386, 394 (1989). Reasonableness is an objective inquiry: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham* v. *Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Whether a particular use of force is reasonable is judged from the perspective of a reasonable officer at the scene. An analysis of reasonableness must account for the fact that officers make split second decisions about how much force is necessary in rapidly evolving situations. *Graham*, 490 U.S. at 369-97.  Furthermore, reasonableness is to be measured objectively in light of the facts

and circumstances facing the officer regardless of the subjective intentions of the individual. *Id*. at 397.

Reasonableness requires careful attention to the facts of each case and is dependent on the totality of the circumstances of each case. This determination includes the following considerations: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight". *McCoy* v. *Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) citing *Graham* v. *Connor*, 490 U.S. 386, 394 (1989). Notably in the present case the parties are not contesting whether a seizure occurred as the Defendants were trying to arrest Mr. Lakey. Therefore, our inquiry will focus on whether the officers reasonably carried out the seizure.

## ANALYSIS

### I.   Deputy Duggan

#### A.  Plaintiff's Fourth Amendment Claim Against Deputy Duggan.

Deputy Duggan argues that he did not violate Mr. Lakey's Fourth Amendment Rights and that he is entitled to Qualified Immunity for any violations. Whether Deputy Duggan violated Mr. Lakey's Fourth Amendment rights depends on whether the force he used against Jared was objectively reasonable under standard set forth in *Graham*. 490 U.S. at 396. In this case the relevant use of force is the LVNR deputy Duggan used on Mr. Lakey.

#### 1. Graham Factor One

The first *Graham* factor weighs in favor of Defendant Duggan. We find the crime at issue was severe insofar as it was a felony. When Deputy Duggan arrived to the scene, he believed that Mr. Lakey had been fighting with the officers and resisting arrest. Pursuant, to 21 O.S. § 649 (B) battery

or assault and battery on a police officer while the officer is in the performance of his or her duties is a felony. Furthermore, resisting arrest "by force or violence" is a misdemeanor pursuant to 21 O.S. § 268. Given the violent nature of both crimes, the crimes at issue are severe and therefore factor one weighs in favor of Deputy Duggan's decision to use force.

### 2. Graham Factor Two

With respect to the second *Graham* factor, a reasonable jury could find that Mr. Lakey did not pose an immediate threat to the safety of the other officers at the time that Deputy Duggan arrived on the scene and applied the LVNR. This factor is analyzed "at the precise moment that the officer used force." *Estate of Ronquillo by and through Estate of Sanchez* v. *City and County of Denver*, 2016 WL 10843787, at *3 (D. Colo. Nov. 17, 2016). In reaching this conclusion we consider in part, the Tenth Circuit's four part test. *Est. of Larsen ex rel. Sturdivan* v. *Murr,* 511 F.3d 1255, 1260 (10th Cir. 2008). This includes the following nonexclusive factors: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with the officer's commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspects; and (4) the manifest intentions of the suspect." *Id.*

When Deputy Duggan arrived on scene, one of the other officers says, "let us put handcuffs on you", but it is the only order any of the officers give Mr. Lakey while Duggan is on the scene. Mr. Lakey remains seated on the curb and does not move. Deputy Duggan states that he believed that Mr. Lakey was tensing his muscles in preparation to resist, however that is ambiguous and subjective evidence at best. Therefore, when viewing the evidence in the light most favorable to the Plaintiff we cannot interpret Mr. Lakey's conduct as resisting arrest.

Furthermore, a suspect's initial resistance does not justify the continuation of force once the resistance ceases. *See Perea*, 817 F.3d at 1203 ("Although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not."). Therefore, the fact that Deputy Duggan was aware Mr. Lakey was previously resisting does not mean he can ignore that the situation had clearly changed. With respect to the third component, there was a small distance separating the officers and the subject. During the time that Deputy Duggan was at the scene, Mr. Lakey's manifest intentions were not hostile towards the officers. He was sitting on the ground when Deputy Duggan arrived and the OSBI video clearly shows that he is not actively resisting. Therefore, a reasonable jury could find that Mr. Lakey did not pose an immediate threat to the safety of the officers on the scene and the second *Graham* factor weighs against Defendant Duggan.

### 3. Graham Factor Three

With respect to factor three, viewing the evidence in the light most favorable to the Plaintiff, Mr. Lakey was no longer actively resisting arrest or attempting to evade arrest by flight. Again, Mr. Lakey was merely sitting on the curb when Deputy Duggan arrived. Furthermore, Deputy Duggan's testimony during Officer Dingman and Officer Taylors criminal trial indicates that he would not characterize Lakey's behavior immediately prior to the LVNR as actively resisting. [*See* Dkt. No. 40-29, Duggan 80: 4-11 "I don't know if I would say he was actively resisting."; Dkt. No. 378-1 p. 31 ln. 1-4: Duggan states that he was not actively resisting, but he was being non compliant because he was not "paying attention to [his] commands".] The only command given to Mr. Lakey was to "let us put hand cuffs on you". In response, Mr. Lakey does not move.

The Tenth Circuit has consistently held that a suspect's initial resistance does not justify the continuation of force once the resistance ceases. See *Perea*, 817 F.3d at 1203 ("Although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not."). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back ... the officer would be justified in using more force than in fact was needed." *Jiron* v. *City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004). However, the instances in which courts have held that an officer's belief that a suspect was resisting are distinguishable from the case at bar. For instance, the Defendant references multiple cases where the officers use of force was justified because the suspect appeared to be reaching for a weapon. *See* Docket No. 378 at p. 26 citing *Slattery* v. *Rizzo*, 939 F.2d 213, 214-17 (4th Cir. 1991); Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir. 2011); *Pollard* v. *City of Columbus, Ohio*, 780 F.3d 395, 403 (6th Cir. 2015) (in all of these cases the officer's use of deadly force was found not unconstitutional because the officer mistakenly believed the suspect who was ignoring verbal commands to be reaching for a weapon). The same is not true here where Mr. Lakey was sitting on a curb naked, was not making any threatening gestures, and was not given the opportunity to comply with officers' commands.

Thus, at minimum, viewing the evidence in the light most favorable to the Plaintiff, there is a dispute of fact regarding whether Mr. Lakey was actively resisting arrest when Deputy Duggan employed the LVNR, and whether it was reasonable for Duggan to treat him as suspect to is resisting, regardless of what Deputy Duggan knew about any prior resistance.

A reasonable jury could find that, under the totality of the circumstances, even considering the other officers reports of resistance and Duggan's subjective fear that the other officers would not help, a reasonable officer in Duggan's position could observe that Mr. Lakey was effectively

subdued and would therefore not be justified in using force to further subdue him using the LVNR.

Accordingly, a because a reasonable Jury could find that Deputy Duggan violated Mr. Lakey's

fourth amendment rights, we cannot grant summary judgment on these grounds.

### B. Deputy Duggan is Not Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim

As discussed above the Plaintiff has successfully provided sufficient evidence that Deputy

Duggan violated Jared Lakey's Fourth Amendment rights by using excessive force when he

administered the LVNR. We now turn to the question of whether the right in question was clearly

established at the time of the conduct. The events giving rise to this litigation occurred in July

2019. Plaintiff argues that the following cases constitute clearly established law. As mentioned in

the discussion of the Fourth Amendment violation, the Tenth Circuit has held that "a suspect's

initial resistance does not justify the continuation of force once the resistance ceases". *Perea* v.

*Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016).

In *Walton* v. *Gomez (Estate of Booker)* the court held that use of a neck restraint on a subdued

and handcuffed suspect who was not actively resisting constituted disproportionate use of force.

745 F.3d 405, 429 (10th Cir. 2014). While it is true that Mr. Lakey was not handcuffed when

Deputy Duggan applied the LVNR, he was clearly subdued as he can be seen on the video sitting

passively on the ground. Additionally, in *Dixon*, the Tenth Circuit held that that a reasonable

officer could have believed that his conduct violated clearly established law when he continued to

use force, choking, and beating, against an individual who was no longer resisting, and was not

making any aggressive moves or threats. *Dixon* v. *Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991).

*See also Herrera* v. *Bernalillo Cty. Bd. of Cty. Comm'rs*, 361 Fed.Appx. 924, 929 (10th Cir.2010)

(unpublished) (use of force against detainee who officers initially believed would flee, but who demonstrated that further flight was unlikely, was clearly excessive.)

Similarly, here, even though Deputy Duggan knew that Mr. Lakey may have resisted previously, the circumstances had clearly changed, and a reasonable officer would realize that the LVNR was unreasonable as Mr. Lakey as effectively subdued and unlikely to flee. Thus, because it is clearly established in the Tenth Circuit that "continued use of force after an individual has been subdued is a violation of the Fourth Amendment". *Perea* v. *Baca*, 817 F.3d 1198, 1205 (10th Cir. 2016), Deputy Duggan is not entitled to qualified immunity and his Motion for Summary Judgment [Docket No. 378] is therefore DENIED.

## VII.     Officer Miller

Officer Terry Miller of the Lone Grove Police Department has also moved for Summary Judgment on the following claims (1) excessive force in violation of the Fourth Amendment and (2) a failure to intervene in violation of the Fourth and Fourteenth Amendments, and (3) deliberate indifference to serious medical needs in violation of the Fourteenth Amendment. Defendant Miller argues that he is entitled to summary judgment based on qualified immunity as to all three claims. [Docket No. 384 at p.1]. As with defendant Duggan, we must first determine whether officer Miller violated Mr. Lakey's federal constitutional or statutory right and whether the right was clearly established at the time of the challenged conduct. *Estate of Booker*, 745 F.3d at 411.

### A.  Waiver

Plaintiff argues that Officer Miller waived qualified immunity by failing to raise the argument in his Answer [Docket No. 399]. We disagree. The Tenth Circuit has previously held that a defendant does not waive an immunity defense by not asserting the defense is his pleadings as

14

required by Fed. R. Civ. P. 8 (c). *Ball Corp*. v. *Xidex Corp*., 967 F.2d 1440, 1444 (10th Cir. 1992). In *Ball Corp*, the Tenth Circuit held that where the Defendant did not waive his immunity defense, despite failing to plead the defense when he raised it in his summary judgment motion filed approximately three months before trial. *Id* at 1444. The Court reasoned that "the purpose behind [R]ule 8 (c) is to put the plaintiff on notice prior to trial that the defendant intends to present a defense in the nature of an avoidance", and that raising the issue on summary judgment served that purpose. *Id*. quoting *Marino* v. *Otis Eng'g Corp*., 839 F.2d 1404, 1408 (10th Cir.1988).

To determine whether a Defendant may constructively amend their answer to include an immunity defense, the Tenth Circuit has held that courts should apply the same standards used to determine whether a defendant may amend their answer. *Ahmad* v. *Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006). "Although failure to raise an affirmative defense under Rule 8(c) in a party's first responsive pleading generally results in a waiver, where the matter is raised in the trial court in a manner that does not result in unfair surprise technical failure to comply with Rule 8(c) is not fatal. *Ahmad* v. *Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006). As with a motion to amend a pleading, a court may deny a constructive amendment of a pleading when permitting amendment would cause the opposing party to suffer prejudice, or the amendment is an attempt to make a pleading a "moving target" or "to salvage a lost cause by untimely suggestion of new theories." *Sky Harbor Air Serv., Inc*. v. *Reams*, 491 F. App'x 875, 884 (10th Cir. 2012).

In the present case, the Defendant inadvertently omitted qualified immunity from his Answer. Additionally, Plaintiff was on notice that the Defendant intended to assert qualified immunity because he had previously raised the defense in his Motion to Dismiss [Docket No. 129]. Finally, as the Defendant points out, Plaintiff was not able to point to any prejudice they suffered because of this omission and was clearly able to adequately brief the issue in response to Defendant's

Motion. Accordingly, while it is true that Officer Miller does not explicitly plead qualified immunity in his Answer [Docket No. 346], the Plaintiff was not prejudiced, and the Defendant did not omit the defense for the purpose of delay or out of bad faith and therefore, officer Miller may "constructively amend" his answer by raising qualified immunity in his Motion for Summary Judgment.

### B.  Plaintiff's Excessive Force Claim Against Officer Miller

First, we must acknowledge that there is a dispute between the parties as to how much force Officer Miller used against Mr. Lakey.  Plaintiff alleges that Officer Miller used force against Mr. Lakey in two instances. The first occurred when Officer Miller placed his foot on Jared's right ankle.  The second happened when Officer Miller was holding Mr. Lakey in a bent over position. It is disputed between the parties exactly how much force Officer Miller was placing on Mr. Lakey's back to keep him bent over. Alternatively, Officer Miller has asserted that he was merely placing a hand on Mr. Lakey's back so that the subject knew Miller was there, but that Mr. Lakey assumed the bent forward posture on his own. In either case, the record does not support an inference that Officer Miller used more than minimal force against Mr. Lakey.

### 1.  Graham Factor One

As with Deputy Duggan we will apply the *Graham* factors to Officer Miller's conduct to determine whether there is a Fourth Amendment violation. With respect to the first factor, like with Deputy Duggan, Officer Miller believed that Mr. Lakey had been resisting arrest and fighting with the officers which is a misdemeanor and a felony, respectively. Accordingly factor one weighs in Officer Miller's favor as these constitute serious crimes.

### 2.  Graham Factor Two

Furthermore, with respect to factor two, at the precise moments Officer Miller applied force, a reasonable jury could find that Mr. Lakey did not pose an immediate threat to the officers. In the first instance when Officer Miller stood on his ankle, Mr. Lakey was already on the ground and several other officers were actively handcuffing him. [Docket No. 385-2 OSBI Combined View video, 14:21- 15:10.] Officer Miller In the second instance Mr. Lakey was seated on the curb with his hands cuffed behind his back. Even though he was a large man, his ability to present a threat to the officers was minimal. Furthermore, the record does not show that Officer Miller gave Mr. Lakey any commands during this time. Mr. Lakey also did not make any hostile motions towards the officers prior to Officer Millers other uses of force. While he was in close physical proximity to Officer Miller, his manifest intentions, in the light most favorable to the Plaintiff were not to flee or fight with the officers. He was sitting on the curb and his movements, when viewed in the light most favorable to the plaintiff, could have simply been an effort to sit up so that he was more comfortable, and not to get up and flee. Accordingly, because Mr. Lakey was not an immediate threat to the officers, factor two weighs against Officer Miller.

### 3. Graham Factor Three

Finally factor three also weighs against Officer Miller. Viewing the facts in the light most favorable to the Plaintiff, Mr. Lakey was no longer actively resisting.  We must consider the totality of the circumstances, including the actual amount of force used by Miller and the reports that other officers gave to Miller prior to his arrival. *Perea*, 817 F.3d at 1202. (When assessing whether force was excessive it is critical to account for the "degree of force actually used".) Assuming, as Plaintiff argues, that Officer Miller was pressing on Mr. Lakey's shoulder with enough force to keep him bent over. A reasonable jury could find that given that Mr. Lakey was subdued and no longer actively resisting, that this amount of force was unreasonable under the circumstances.

Furthermore, to the extent that the defendant argues that his conduct did not cause Mr. Lakey's death, there is evidence in the record both for and against that proposition. Thus, it is a question of fact better left to the jury.

Finally, because the right at issue is clearly established, officer Miller is not entitled to qualified immunity. There is clearly established Tenth Circuit precedent, holding that pressing on a detained subjects back in a manner that increases the risk of positional asphyxia violates a subject's fourth amendment rights. *See Weigel* v. *Broad,* 544 F.3d 1143, 1152 (10th Cir. 2008); *Cruz* v. *City of Laramie*, 239 F.3d 1183, 1188-89 (10th Cir. 2001. (A reasonable officer should know that placing pressure on the suspect's chest may cause respiratory distress.) Accordingly, officer Miller is not entitled to summary judgment on Plaintiff's excessive force claim.

## C.  Failure to intervene in violation of the Fourth and Fourteenth Amendments

Officer Miller is also not entitled to summary judgment on the Plaintiff's failure to intervene claim. An individual officer is not held liable merely because he was present at the scene of a constitutional violation, but he may be liable if he can intervene and fails to do so. *Lusby* v. *T.G. & Y. Stores, Inc*., 749 F.2d 1423, 1433 (10th Cir. 1984), cert. granted, judgment vacated sub nom. *City of Lawton, Oklahoma* v. *Lusby*, 474 U.S. 805, 106 S. Ct. 40, 88 L. Ed. 2d 33 (1985). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official [.]"*Hall* v. *Burke*, 12 F. App'x 856, 861 (10th Cir. 2001). Our inquiry in this case is made more challenging by the fact that Officer Miller was not aware of the nature and extent of the previous uses of force by other officers.

To determine whether Miller violated the Plaintiff's rights by failing to intervene, we must ask not only whether Miller had an opportunity to intervene but also whether the other officer's actions would have appeared objectively unreasonable to an officer in Miller's position. Plaintiff does not argue that Miller was obligated to intervene with the LVNR. Instead, Plaintiff argues that Miller violated Mr. Lakey's rights by failing to intervene when Defendants Dingman and Duggan pushed Mr. Lakey's head down after Jared was handcuffed and restrained. [Docket No. 399 at p. 29]. Accordingly, this is the conduct we will analyze in the context of this argument.

Plaintiff argues that Defendant Miller was on notice that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983. *Lusby* v. *T.G. & Y.* Stores, Inc., 749 F.2d 1423, 1433 (10th Cir.1984) (ruling that officer who did not prevent fellow officer's use of allegedly excessive force against an arrestee "may be liable [under § 1983] if he had the opportunity to intervene but failed to do so"), vacated on other grounds, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); accord *O'Neill* v. *Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.").

A reasonable jury could find that Deputy Duggan and Dingman violated Mr. Lakey's constitutional rights because needlessly shoving Mr. Lakey's head down after he had been restrained was unreasonable. The Tenth Circuit has previously held that applying pressure to a restrained suspect's back thereby placing him at greater risk of positional asphyxia is constitutionally unreasonable where the officers have been specifically warned, through their training of this specific danger. *Weigel*, 544 F.3d at 1155. The Tenth Circuit overturned a District

Court grant of qualified immunity to an officer who did not intervene when another officer placed pressure on the back of a hog tied suspect. *Id*. at 1155. The court held that there was:

> [E]vidence that … even after it was readily apparent for a significant period of time (several minutes) that [the suspect] was fully restraint and posed no danger, the defendants continued to use pressure on a vulnerable person's upper torso while he was lying on his stomach. A reasonable officer would know that these actions present a substantial and totally unnecessary risk of death to this person.

*Weigel* v. *Broad*, 544 F.3d 1143, 1154 (10th Cir. 2008).

In the present case, the record shows that Mr. Lakey was handcuffed and placed in a seated position as of 15:12 on the OSBI Combined View Video. Then at "various times Duggan and Dingman placed their hands on Jared's head and neck and forced his head down". *See* Docket No. 385 at p. 13 ¶ 71. citing the OSBI Combined View Video, at 15:12-18:28. During this time the only force Officer Miller admits to using is maintaining a hand on Jared's shoulder, to "provide just enough assurance that he knew I was still there". Docket No. 385 at p. 13 ¶ 69. It was clearly established that once Mr. Lakey was fully restrained, which he was through a combination of the handcuffs and Miller's presence, that a reasonable officer would know that Dignam and Duggan shoving Mr.Lakey's head down violated his rights.

Accordingly, Officer Miller was present during a potential excessive use of force, and he failed to intervene. Whether or not he had sufficient opportunity to intervene or could do so is a question of fact for the jury unless a reasonable jury could not conclude otherwise. *Vondrak* v. *City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008).  Thus, we find that a reasonable jury could find that Officer Miller violated the Plaintiff's rights by not intervening in the other Officers use of force.

 Accordingly, because a reasonable jury could find that Miller failed to intervene in their excessive use of force, and it was clearly established both that he has a duty to intervene and that

Duggan and Dingman violated Jared's rights through post restraint force. Officer Miller is not entitled to qualified immunity on Plaintiff's failure to intervene claim.

### D. Deliberate Indifference to a Serious Medical Need in Violation of the Fourteenth Amendment.

Finally, Officer Miller argues he is entitled to qualified immunity on Plaintiff's claim that he was deliberately indifferent to a serious medical need in violation of the Fourteenth Amendment. The Fourteenth Amendment guarantees pretrial detainees the same "'degree of protection against denial of medical attention which applies to convicted inmates'". *Clark* v. *Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018) quoting *Garcia* v. *Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985). Thus, even though the Eighth Amendment "does not apply until after an adjudication of guilt" pretrial detainees are guaranteed the same protection from infliction of "cruel and unusual punishment" including a right to certain minimum standard of medical care provided by this Amendment. *Id*; U.S. Const. amend. VIII. Therefore, liability may be imposed on government actors if a plaintiff can show "deliberate indifference to [his] serious medical needs." See *Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976).

The deliberate indifference analysis consists of an objective and a subjective component. *Martinez* v. *Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The objective component is determined by analyzing whether the need is objectively serious. A Plaintiff must also show that the deprivation was sufficiently serious. *Farmer* v. *Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted). A need meets this "requirement if it is on that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention." *Martinez* v. *Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The subjective component analyzes whether the defendant "knows of and disregards

an excessive risk to [the plaintiff's] health or safety". *Id*. The second element is satisfied when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Furthermore, a "[d]isagreement about course of treatment or mere negligence in administering treatment do not amount to a constitutional violation." *Strain* v. *Regalado*, 977 F.3d 984, 987 (10th Cir. 2020).

### 1. Objective Test

The serious medical condition alleged by the Plaintiffs is Mr. Lakey's respiratory arrest. [Docket No. 87]. Officer Miller concedes in his briefing that the objective element is met because "both respiratory arrest and death" are sufficiently serious medical needs. [Docket No. 384 at p. 18].

Officer Miller argues, however that his actions did not cause either harm. There is evidence on the record that supports this contention, and there is also evidence supporting the Plaintiff's argument that Millers actions contributed to Mr. Lakey's respiratory arrest and death. For example, Dr. Sperry testified that Miller's failure to timely initiate CPR was a "very substantial causative factor" in Mr. Lakey's death. [Docket No. 398-2 Sperry Deposition, 130:9-14]. Whether Miller's actions caused Mr. Lakey's serious medical conditions is therefore a question for the jury as there is evidence both for and against the proposition. *Questar Pipeline Co*. v. *Grynberg*, 201 F.3d 1277, 1284 (10th Cir. 2000). (the court should "not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury".)

### 2. Subjective Test

A reasonable jury could find that the Plaintiff satisfied the subjective component of the deliberate indifference inquiry. The record shows that officer Miller knew of Mr. Lakey's respiratory distress and difficulty breathing well before he took any actions to save him. While it is true that he was not aware of the true amount of force Dingman and Taylor used against Mr. Lakey he was fully aware that Duggan used a neck restraint on Mr. Lakey. After use of that neck restraint, Mr. Lakey can be heard clearly struggling to breath. Officer Miller seems to acknowledge this momentarily, when he attempts to pick up Mr. Lakey's head, but he then abandons this effort. [OSBI Video 15:13]. Even though Mr. Lakey is clearly struggling to breath, Officer Miller makes no efforts to protect his airway. Instead, Officer Miller can be seen in the video leaning on Jared's back conduct which arguably makes Mr. Lakey's condition worse. Officer Miller also fails to intervene when other officers come push Mr. Lakey's head down which could be interpreted as deliberate indifference for the fact that such actions make it even more difficult for Mr. Lakey to breath.

At approximately the 16:46, mark Mr. Lakey's breathing can no longer be heard, and the video shows Mr. Lakey completely bent over. [OSBI combined view at 17:45]. Despite being able to hear Mr. Lakey's labored breathing and notice that it had stopped, the record shows that Officer Miller does not attempt to help Mr. Lakey. It is not until a minute and a half later when Officer Dingman asks if Mr. Lakey is still breathing, that officers attempt to revive him by shouting "wake up" and hitting his back. [*Id*. at 18:15]. There is further delay before initiating CPR while the officers contemplate using Narcan.

Officer Miller was directly next to Mr. Lakey when he was clearly in respiratory distress and when he completely stopped breathing. Mr. Lakey's symptoms were sufficiently serious to indicate to Officer Miller that he faced a substantial risk of harm. *Marquez* v. *Board of County*

23

*Commissioners Eddy Count*y, 2012 WL 12895017, at *5 (D.N.M. Dec. 3, 2012). "If a risk is obvious so that a reasonable man would realize it, we might well infer that did in fact realize it". *Garrett* v. *Stratman*, 254 F.3d 946, 949 (10th Cir. 2001). A reasonable jury could find that given his proximity to Mr. Lakey and his eventual acknowledgment of the fact that Mr. Lakey was not breathing that there is sufficient evidence on the record that Officer Miller was subjectively aware that Mr. Lakey was in respiratory distress- an objectively serious medical condition.

Furthermore, the contours of the right were established that the under the circumstances that Officer Miller was presented his failure to act would Mr.Lakey's constitutional rights.  In, *Estate of Booker*, the Tenth Circuit held that police officers "having rendered Mr. Booker unconscious by use of force" and previous taser stuns, should have known that "failing to check Mr. Booker's vitals or seek immediate medical attention could evince deliberate indifference to a serious medical need". *Est. of Booker* v. *Gomez*, 745 F.3d 405, 434 (10th Cir. 2014).  In reaching this conclusion, the court relied on the following cases "[a]ccordingly, the defendants were not entitled to qualified immunity. *See Estate of Owensby*, 414 F.3d at 603 (arresting officers' six-minute delay in seeking medical care for arrestee who died of asphyxiation could evince deliberate indifference); see also *McRaven,* 577 F.3d at 983 (denying qualified immunity where officer 'made no attempt to resuscitate' the prisoner 'for seven minutes before paramedics arrive[d]')." *Est. of Booker,* 745 F.3d at 434. It is not necessary for the cases to be identical. Even briefly delaying care under these circumstances can be a violation of a constitutional right. Officer Miller delayed for at least three minutes and forty two seconds. Thus, it was clearly established that his delay violated Mr. Lakey's constitutional rights. Furthermore, it is clearly established that eventually providing medical care does not cure a violation of constitutional rights. *Mata* v. *Saiz,* 427 F.3d 745 (10th Cir. 2005). ("it is clearly established that a subsequent effort to provide medical care will not undo an existing

violation of constitutional rights".) Thus, the fact that Officer Miller eventually attended to Mr. Lakey does not mean that he met his duty.

Thus, Officer Miller is not entitled to qualified immunity on Plaintiff's deliberate indifference claim and his Motion for Summary Judgment [Docket No. 384] is hereby DENIED.

### Conclusion

In sum Motion for Summary Judgment and Brief in Support by David Duggan [Docket No. 378] is hereby DENIED and Amended Motion for Summary Judgment and Brief in Support by Terry Miller [Docket No. 384] is hereby DENIED.

II IS SO ORDERED THIS 16th DAY OF MAY, 2024.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE

25